ROTORITE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

No. 7340.

Circuit Court of Appeals, Seventh Circuit.

Jan. 3, 1941.

TREANOR, Circuit Judge, dissenting.

Raymond H. Schultz, Victor J. Voorheis, and David C. Kenyon, all of Chicago, Ill., for petitioner.

J. P. Wenchel and Chas. E. Lowery, both of Washington, D.C., for respondent.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

EVANS, Circuit Judge.

The payment of $65,797.06 to petitioner in the year 1935 has become the subject of uncompromising controversy between the Commissioner and taxpayer. Respondent contends that this sum was a part of petitioner's taxable income for 1935. Petitioner argues that the amount was paid as a part of the purchase price of patents which it owned.

More specifically the litigation is over a deficiency tax totalling $11,702.91 which was made up of the following items: $3,784.37, income taxes, $6,336.83, personal holding company surtaxes, and $1,581.71, penalty.

A subsidiary issue concerns petitioner's status as a "personal holding company." Revenue Act 1934, § 351(b)(1), 26 U.S.C.A. Int.Rev.Acts, p. 757, defines a personal holding company as one which receives "at least 80 per centum of its gross income * * * from royalties * * *." If the payments received in the early part of 1935 were royalties, and not partial payment of purchase price, petitioner falls within that definition. Petitioner failed to file a personal holding company return, and a penalty of 25% was therefore imposed. Petitioner did no other business during 1935. In 1934, it had reduced the call price of its preferred stock from $110 to $85 per share.

The facts: Plaintiff is an Illinois corporation organized to acquire and develop certain household refrigerating machine patents and to manufacture and sell such machines. In 1929 it contracted with Sunbeam Electric Manufacturing Co. and granted it the exclusive right to manufacture, sell, and use electric refrigerators under petitioner's patents for the full term of the patents. On March 30, 1933, effective as of January 1, it entered into a supplemental contract which provided that the rate of royalties be 2% of the billing price. This contract also granted a purchase option. The option was to purchase the patents for $135,000. If it exercised its option to purchase the patent, Sunbeam was required to give notice in writing and was to be credited, upon said purchase price with all royalties paid by Sunbeam to Rotorite between January 1, 1933, and the date of purchase. The unpaid balance thereupon became due and payable. $16,767.08 was paid in 1933 as royalties. In 1934, $50,819.97 was paid. This left on January 1, 1935, a balance of $80,556.81 on the purchase price, if the option were exercised. Sunbeam exercised its option in this year, 1935, after it had paid $65,797.06

to petitioner as royalties. Controversy arises over the character of this $65,797.06 payment. Was it purchase price money or was it royalty?

We must first establish a perspective to aid us in determining the nature of the transaction under survey.

The payments made in 1935, before written notice of the exercise of the option was given, might well be called royalties. Quite as well might it be said that the major portion of said payments was made with the taxpayer's full knowledge that the licensee would exercise its option and have the payments applied on the purchase price. In the same year, at least, it early became apparent, and then a certainty, that these installment payments were to be used as purchase price payments.

Such being the situation, is a taxpayer not permitted to view the taxable year as a whole or must it be held, through a refinement of distinctions which emphasizes words, rather than looks to the heart and the substance of the transaction, by said words? It is not a question of what the payments were called: What were they in fact?

■ We reach the conclusion that the payments were purchase money payments.

*Reasons.*

■ (1) It has often been said, "Taxation * * * is eminently practical." Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 359, 74 L.Ed. 991, 69 A.L.R. 758. We must look through the form to the substance of the transaction.

In the year 1935 Sunbeam's payment made certain the exercise of its option, an act which by the agreement of the parties made the royalty payments, purchase price payments. On January 1, 1935, the payments which had been made, were so large and growing in amount that acquisition of the patents under the option was certain. The payment of $65,000 in the first five months confirmed the conclusion apparent on January first. In fact, the payments in 1934 grew so rapidly as to tellingly forecast the exercise of the option.

(2) The payments were made and their character determined by Sunbeam. It, not the taxpayer or the respondent, fixed the status of the payments. No one could doubt but that Sunbeam's 1935 payments were made in the expectation that it would soon make its election and thus give to all of its payments, purchase money status.

(3) The parties agreed, if we look merely to the words of the agreement, that a payment might be both a royalty and a purchase money payment. True, the latter character was determinable by the optionee. But its action was in turn dependent on facts, to-wit, the amount of the royalties. The parties contemplated a sale of patents if their use and value measured in royalties equaled or exceeded the purchase price. The election of the optionee was a foregone conclusion—if the royalties approached or equaled the purchase price. When that fact occurred—to-wit, sales sufficient to pay royalties equal to purchase—then the payments changed from royalties to part payments of purchase price.

(4) In passing on Sunbeam's taxes for the year 1935, the Commissioner treated its payments as advances on purchase price of patents—not royalties. While consistency is not required of the Commissioner any more than it is of courts or Congress, it adds not to the persuasiveness of the present finding of the Commissioner, on the same fact situation, that the payments in the companion case were declared to be purchase money payments. Moreover, the decision of the Board in this case was reached with six dissenting votes.

It follows that the order of the Board affirming the assessment by the Commissioner of the deficiency tax must be reversed with directions to enter an order in accordance with the views here expressed.

It is so ordered.

TREANOR, Circuit Judge, (dissenting).

The substance of the transaction which gives rise to the tax question must be found in the contract between the taxpayer and Sunbeam. The substance of the option was the grant to Sunbeam of the privilege to purchase the patents at a price of $135,-000, reduced by the amount of royalty payments made by Sunbeam subsequently to January 1, 1933, and prior to the election by Sunbeam to purchase. Prior to the date of election the payments were in fact and in law royalty payments. By the terms of the option Sunbeam became in fact and in law the owner of the patents on June 13, 1935, when it elected to exercise its rights under the option. By force of the revenue laws the royalty payments received in 1935 prior to June 13 became a part of taxpayer's gross income for

1935. On June 13 taxpayer ceased to be the owner of the patents and was entitled to no more royalty payments; and Sunbeam became the owner with an obligation to pay as purchase price the $135,000 less all royalty payments made prior to June 13, 1935.

In my opinion all payments made prior to June 13, 1935, were royalty payments, and under the law constituted income.