BLACKSTONE THEATRE CO. (FORMERLY SLAVIN AMUSEMENT CO.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17318. Promulgated May 20, 1949.

*Louis Winsten, C. P. A.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: Respondent determined deficiencies in income tax for the years 1942, 1943, and 1944 and in excess profits tax for 1943, in the following amounts:

| Year | Income tax | Excess profits tax |
|------|-----------|--------------------|
| 1942 | $1,123.93 | |
| 1943 | 1,088.54 | $8,771.50 |
| 1944 | 1,431.69 | |

Petitioner claims an overpayment in income tax for 1943.

Because of certain concessions by petitioner [1] and because the determination of petitioner's net operating loss carry-back from 1945 has been reserved by the parties for Rule 50 computation, dependent upon the outcome of this proceeding, only one issue is presented—petitioner's basis for purposes of depreciation during the years before us of a theatre building it acquired in April 1941. Stated more narrowly, the problem is whether there should be included in petitioner's basis the full amount of tax liens outstanding against the property when it was acquired, as petitioner contends; or whether the basis should be retroactively reduced to reflect the purchase of the tax liens by petitioner at public sale at a discount of more than 50 per cent in May 1946, as respondent urges.

All of the facts have been stipulated and are hereby found accordingly.

Petitioner, an Illinois corporation, was organized in February 1941, with the corporate name of Slavin Amusement Co. Its name was changed in 1945 to Blackstone Theatre Co. For the taxable years involved it filed its income tax returns with the collector at Chicago, Illinois.

On April 13, 1941, petitioner purchased the land and building located at 60 East Balbo Avenue, Chicago, Illinois, and continued to hold title to the property during the years before us. The building has been generally known as the Blackstone Theatre Building.

At the date of purchase, tax liens were outstanding on the property in the sum of $120,950.03, representing real estate taxes and penalties for the years 1929 to 1940, inclusive, which had been assessed and which were unpaid.

---

[1] Petitioner concedes that the respondent properly disallowed deductions claimed by petitioner for maintenance and repairs amounting to $881.28 for 1941, $605.33 for 1942, $3,512.02 for 1943, $2,495.70 for 1944, and $5,219.30 for 1945. These amounts were added by respondent to the cost basis of the property for the purpose of computing depreciation thereon in the respective years.

Between 1941 and 1945 petitioner did not have available funds with which to purchase the outstanding tax liens. In the latter part of 1945 new interests acquired one-half of petitioner's capital stock, and these parties agreed to advance to petitioner the funds needed to purchase the liens.

Thereafter, in February 1946, petitioner bid the sum of $40,220.77 for the tax liens outstanding, at a hearing before the County Court of Cook County, Illinois, in connection with the foreclosure of the liens. A sale was not approved at that time, and petitioner's bid was not accepted because of the availability of another offer to pay $10,000 as a guarantee on a $50,000 bid. In May 1946, however, a public sale was held by order of the court, and petitioner purchased the outstanding liens for $50,220.77. It was required to pay $10,000 in legal fees and $3,000 for title fees in connection with the acquisition of the liens.

At the time of the acquisition of the Balbo Avenue property, petitioner set up its cost on its books, as follows:

| | |
|---|---|
| Purchase price for vendor's equity | $36,800.00 |
| Attorney's fees | 998.04 |
| Fire escapes | 525.00 |
| Accrued taxes, year 1941 | 6,243.50 |
| Accrued taxes and penalties, years 1929–1940 | 120,950.03 |
| Total (land and building) | 165,516.57 |

Of this sum, petitioner allocated $27,964.02 to the cost of land and the remainder of $137,552.55 to the cost of the building, which it used as a basis for computing depreciation thereon.

Respondent has determined the original cost basis of the building to be $79,823.52, as follows:

| | |
|---|---|
| Purchase contract | $36,800.00 |
| Attorney's fees | 998.04 |
| Fire escapes | 525.00 |
| Taxes—1941 | 6,243.50 |
| Taxes—1940 and prior years | 50,221.00 |
| Legal fees and title fees paid at time of purchasing tax liens | 13,000.00 |
| Total (land and building) | 107,787.54 |
| Less: Allocated to land | 27,964.02 |
| Balance allocated to building | 79,823.52 |

In the statement attached to the notice of deficiency, respondent explained the contested adjustment:

It is held that the cost of the building for depreciation purposes, under Section 114 of the Internal Revenue Code, includes amounts expended in satisfaction of accrued and unpaid property taxes and in the acquisition of property tax liens, outstanding at date of acquisition of the building. It is held further, the excess of assessments and liens over the amounts expended therefor, does not

constitute a part of the cost of the building for depreciation purposes, under section 114 of the Code.

Whatever vitality respondent's present position, or a sterner one he asserts he may have taken,[2] may have had before the Supreme Court spoke in *Crane* v. *Commissioner* 331 U. S. 1, it can not now be said to have survived the broad sweep of that decision. From *Crane* we can deduce the following applicable principles:[3] (a) The basis for given property includes liens thereon, even though not personally assumed by the taxpayer; and (b) the depreciation allowance should be computed on the full amount of this basis. These principles, we believe, are controlling in this proceeding, and should be dispositive of the one litigated issue presented.

If petitioner had personally assumed liability for the discharge of the tax liens, then authorities even antedating the *Crane* case would have substantially undermined respondent's thesis.[4] See *Brons Hotels, Inc.*, 34 B. T. A. 376; cf. *United States* v. *Hendler*, 303 U. S. 564. The factor of assumption or nonassumption of outstanding liens in a controversy such as here presented ceases to be controlling when the reality of the conditions and circumstances attendant upon petitioner's purchase of the property is appraised in light of the *Crane* case.[5] Petitioner acquired the property, impressed with the tax liens, subject to the possibility of a tax sale, unless such taxes were paid or the liens, in some manner, were discharged. 5 Tiffany, The Law of Real Property (3d Ed.), ¶1587; III Cooley, The Law of Taxation (4th Ed.), ¶1238; see Jones Ill. Stat. Ann., 119.525, 119.713, ¶28, 216; *United States* v. *Reese* (CCA-7), 131 Fed. (2d) 466. Undoubtedly, the price paid by petitioner to the vendor reflected the tax lien burden. Cf. Note, 60 Harv. L. Rev. 1324; Braunfeld, "Subject to a Mortgage," 24 Taxes, 424, 425.

---

[2] See *Hotel Astoria, Inc.*, 42 B. T. A. 759. Respondent does not here contend, as there stated, that petitioner's basis should be only the amount paid to the vendor plus certain incidental charges. He does assert, however, that he "would have been warranted in allowing as a basis for depreciation for the taxable years involved only the amount of the original payment under the purchase contract and expenses incident thereto * * *"

[3] See Engel, "Effects of the Crane Case"; Proceedings of N. Y. U., 6th Annual Institute on Federal Taxation, 379–382. See also Greenbaum, "The Basis of Property shall be the Cost of such Property: How is Cost Defined?" 3 Tax L. Rev., 351, 355 *ff*; Note, 60 Harv. L. Rev., 1324.

[4] The Bureau practice of long standing has been to allow depreciation on the basis of the equity plus the amount of the mortgage, and there was a desire [in the *Crane* case] to avoid upsetting this administrative policy." *Greenbaum, op. cit., supra*, p. 356. Cf. Regulations 111, sec. 29.44–2.

[5] In *Crane* v. *Commissioner, supra*, p. 14, the following observation was made: "* * * we are no more concerned with whether the mortgagor is, strictly speaking, a debtor on the mortgage, than we are with whether the benefit to him is, strictly speaking, a receipt of money or property. We are rather concerned with the reality that an owner of property, mortgaged at a figure less than that at which the property will sell, must and will treat the conditions of the mortgage exactly as if they were his personal obligations. If he transfers subject to the mortgage, the benefit to him is as real and substantial as if the mortgage were discharged, or as if a personal debt in an equal amount had been assumed by another." See *Greenbaum, op. cit., supra*.

We are unconvinced that the result to which we are led by the reasoning and underlying theory of the *Crane* case should be otherwise merely because here petitioner was able, at a public sale five years after the acquisition of the property, to purchase the tax liens of over $120,000, for, roughly, $50,000.[6]

Much of the administrative difficulty which, in part, prompted the decision in the *Crane* case would arise if respondent's approach were here to be followed. The difficulties would be accentuated if the reopening of the earlier years had been barred by the running of the statute of limitations. Moreover, respondent's position, in a sense, would do violence to the principle that depreciation deductions should be determined upon conditions known to exist at the end of the period for which the return is made.[7] Regulations 111, sec. 29.23 (1)–5, and sec. 29.113 (b) (1)–1. See *Wier Long Leaf Lumber Co.*, 9 T. C. 990, 998–999; modified without reference to this point (CA–5), 173 Fed. (2d) 549. And it would incorporate into the law a retroactive adjustment of basis, which finds no warrant in the Internal Revenue Code. See sec. 113 (b) (3); cf. sec. 3801.

In no case to which we have been referred was retroactivity, as here pressed by respondent, sought or sanctioned. See *Borin Corporation*, 39 B. T. A. 712; affd. (CCA–6), 117 Fed. (2d) 917; certiorari denied, 314 U. S. 638; *Hirsch* v. *Commissioner* (CCA–7), 115 Fed. (2d) 556, reversing 41 B. T. A. 890; see also *Fulton Gold Corporation*, 31 B. T. A. 519; cf. *Hotel Astoria, Inc.*, 42 B. T. A. 759, with *Crane* v. *Commissioner, supra.*

On the record before us,[8] we conclude that petitioner's basis for the Balbo Avenue property for the years herein involved should include the full amount of the tax liens then outstanding.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, *J.*, dissents.

---

[6] What tax consequences may flow from this purchase of the tax liens in 1946 is a matter not presented for our disposition in this proceeding.

[7] "* * * The original capital sum for depreciation must * * * be tested against the latest developments of the year for which the return is made." 4 Mertens, Law of Federal Income Taxation, p. 28.

[8] What the result might be in a case where the value of the acquired property is less than the amount of the liens, we need not now decide. Cf. *Crane* v. *Commissioner, supra.* From the facts herein presented, an inference may be drawn that at all times material the value of the property was not less than the amount of the liens; as to this factor, petitioner's "willingness * * * to take subject to the * * * lien and pay a substantial amount of cash to boot," *Crane* v. *Commissioner, supra,* at p. 12, as well as the continuing capital improvements, should be considered. There has been no showing nor direct challenge that the property was "clearly worth less than the lien." *Ibid.* Respondent may be vaguely suggesting the point by an unexplained quotation from the *Crane* case, *ibid.,* for the first time in the last sentence of the last paragraph of the last page of his reply brief. Even if respondent thereby sought to bring the matter into issue, we would be constrained to say that it was raised too late. *Maltine Co.,* 5 T. C. 1265, 1275; *Wentworth Mfg. Co.,* 6 T. C. 1201, 1208.