*Decisions will be entered under Rule 50.*

LLOYD H. REDFORD AND ADELAIDE B. REDFORD, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LLOYD H. REDFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44173, 44174. Filed June 28, 1957.

*Armistead J. Maupin, Esq.*, for the petitioners.
*Ralph V. Bradbury, Jr., Esq.*, for the respondent.

### OPINION.

RICE, *Judge:* This proceeding involves the following deficiencies in income tax:

| Docket No. | Year | Income tax deficiency | Additions to tax, sec. 293 (a) |
|---|---|---|---|
| 44174 | 1946 | $4,576.62 | $228.83 |
|  | 1947 | 1,622.47 | 81.12 |
| 44173 | 1949 | 2,841.66 | |

The issue to be decided is whether petitioner may include in his cost basis of lots sold during the years in issue, in addition to known costs of $66,546.75, the amount of $25,000, which amount or one-half of the profits realized from the sale of such lots, if less than $25,000, he was obligated to pay to the person from whom he had originally purchased them after the proceeds from such sales equaled such known costs, when he paid no part of such amount, even when such known costs had been recovered, nor at any other time prior to the hearing of this case.

In determining the deficiencies, the respondent allocated the known cost of the lots to the sales made during each of the years in issue and determined the gain, if any, realized during such years. He amended his answer to ask for an increased deficiency for 1949 in a total amount of $11,883.16, premised on an alternative argument to the effect that all of the gain realized by petitioner from the sale of the lots was taxable to him in 1949, since it was not until that year that the profits from the sale of the lots could have been computed and an accounting had between petitioner and the person from whom he originally purchased them. The additional deficiency for that year is asked in lieu of the deficiencies determined for 1946 and 1947, insofar as such deficiencies relate to the sale of the lots. Concessions were made with respect to other issues which will be taken into account under a Rule 50 computation.

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Lloyd H. Redford (hereinafter referred to as the petitioner) and his wife, Adelaide B. Redford, were residents of Raleigh, North Carolina, during the years in issue. Petitioner filed individual returns for 1946 and 1947 and he and Adelaide filed a joint return for 1949. All such returns were filed on a cash basis with the former collector of internal revenue at Greensboro, North Carolina.

On August 22, 1946, petitioner purchased from W. S. Murchison a tract of land near Raleigh, North Carolina, known as Carolina Pines. Petitioner intended to subdivide the tract and sell it in individual lots. In payment for the land, petitioner and his wife executed 2 notes secured by deeds of trust. The first note, in the principal amount of $61,000 secured by a first deed of trust, was fully negotiable and bore interest at the rate of 6 per cent per annum. It was payable as follows:

| Date payment due | Amount of payment |
|---|---|
| On or before Aug. 22, 1947 | $6,100 |
| On or before Aug. 22, 1948 | 6,100 |
| On or before Aug. 22, 1949 | 6,100 |
| On or before Aug. 22, 1950 | 6,100 |
| On or before Aug. 22, 1951 | 36,600 |

The second note was a promise by petitioner and his wife to pay Murchison the sum of $25,000 on or before August 22, 1951, and was secured by a second deed or trust. The note bore no interest, was non-negotiable, and incorporated the terms of an agreement between petitioner and Murchison, also entered into on August 22, 1946.

Such agreement provided in substance that at the end of 5 years from the date of the note, or at any time prior thereto, when the net income and proceeds from the resale of the land were sufficient to have fully discharged the $61,000 note and to have enabled petitioner to have recovered any development costs, there should be an audit of petitioner's books with respect to the sale of the lots and an appraisal made of the remaining unsold portion of the tract. Petitioner and Murchison, on the basis of such audit and appraisal, were then to compute the total net profits realized, and to be realized from the sale of the property, and petitioner was to pay Murchison the lesser of $25,000 or one-half of such profits, if any. The agreement further provided that petitioner was to pay the $61,000 note promptly; was to keep and maintain the property in good order and condition; was to improve and develop it in a diligent manner by expending not less than $5,000 for permanent improvements on or before 1 year after the date of the agreement; and was to make diligent efforts to rent or resell the property in parcels or as a whole at the highest price available. Murchison was to release the property from the lien of both deeds of trust as petitioner found suitable pur-

chasers, and the proceeds received from the resale of the property were to be applied first to the payment of the first lien deed of trust indebtedness and next to reimburse petitioner for his development costs. If petitioner breached the agreement, the entire unpaid balance of the $25,000 note became immediately due and payable; and, if Murchison breached the agreement, the note became null and void.

Subsequent to August 22, 1946, petitioner spent $5,546.75 for permanent improvements to the Carolina Pines property.

Approximately 90 per cent of the property was sold by petitioner from 1946 to 1949, inclusive. Set forth below are the total sales proceeds which he received during the indicated years:

| Year | Proceeds of sales |
|---|---|
| 1946 | $19, 690. 00 |
| 1947 | 29, 823. 97 |
| 1948 | 14, 250. 00 |
| 1949 | 48, 400. 00 |
| Total | 112, 163. 97 |

Petitioner made payments on the $61,000 note on or before the due dates set forth therein, so that the total amount of such note was paid to Murchison on or before August 22, 1951. Up to the time of the hearing, petitioner had made no payments on the $25,000 note secured by the second deed of trust.

On his returns for 1946, 1947, and 1948, petitioner reported no gain from the sale of any of the Carolina Pines property. On his return for 1949, he reported total sales of $48,400, against which he deducted cost of $36,942.27. Petitioner included in his cost basis of the property the face amount of the $25,000 note. In determining the deficiencies herein, the respondent determined that petitioner's cost basis in the lots sold from 1946 through 1949 was $60,611.75 (he excluded the $25,000), and allocated the gain realized by petitioner on the basis of such cost as follows:

| | |
|---|---|
| Cost of tract | $61, 000. 00 |
| Improvements | 5, 546. 75 |
| Total cost | 66, 546. 75 |
| Less: Assigned cost of lots on hand at Dec. 31, 1949 | 5, 935. 00 |
| Cost allocated to lots sold in 1946, 1947, 1948, and 1949 | 60, 611. 75 |

| | Total | 1946 | 1947 | 1948 | 1949 |
|---|---|---|---|---|---|
| Sales | $112, 163. 97 | $19, 690. 00 | $29, 823. 97 | $14, 250. 00 | $48, 400. 00 |
| Allocated cost | 60, 611. 75 | 10, 640. 18 | 16, 116. 44 | 7, 700. 49 | 26, 154. 64 |
| Ordinary income | 51, 552. 22 | 9, 049. 82 | 13, 707. 53 | 6, 549. 51 | 22, 245. 36 |

The parties agree that any gain realized from the sale of the Carolina Pines property was taxable as ordinary income.

Up to the date of the hearing of this proceeding on January 21, 1957, there had never been a formal accounting between the petitioner and Murchison, pursuant to the agreement, for the $25,000, nor had either petitioner or Murchison ever requested such a formal accounting.

The parties have stipulated the cost of the lots sold from 1946 to 1949, inclusive, both including and excluding the sum of $25,000 from such cost basis. They have also stipulated the cost basis of the remaining portion of the property which the petitioner still held on December 31, 1949, both including and excluding the $25,000 note, as a part of the petitioner's total cost basis of the property.

Petitioner argues that the $25,000 note should be included in his total cost basis of the Carolina Pines property on the ground that the note was just as valid an obligation as was the $61,000 which was secured by the first deed of trust on the property. He agrees that the cost of the property, in whatever amount, is allocable to the sales made during the years in issue and that the gain realized, if any, is taxable in such years. The respondent, on the other hand, based his determination of the deficiencies, and so argues on brief, that neither the $25,000 note nor any lesser amount should be included as a part of the petitioner's cost basis of the property because of the highly contingent nature of the petitioner's obligation to pay such sum to Murchison. He argues that petitioner's total cost basis for the property was $61,000 plus $5,546.75 which petitioner spent for permanent improvements and that such cost basis should be allocated to the lots sold during 1946, 1947, 1948, and 1949; and the gain, if any, reported during those years.

In the alternative, respondent argues that the total gain realized by petitioner from the resale of the land up to December 31, 1949, was taxable to him in that year, and that such gain is to be computed by using only the amount of petitioner's determinable costs as his basis. This argument is advanced on the premise that the contingency of additional amounts to be paid to Murchison made it impossible to compute the gain on the resale of the land until such time as the known and determinable costs, that is $61,000 plus $5,546.75, had been recovered. By the end of 1949 such amounts had been recovered, and respondent therefore argues that there should have been an accounting between petitioner and Murchison in that year to determine what portion, if any, of the profits were to be divided; and since there was no accounting, the full amount of the gain in excess of the determinable costs which petitioner had realized by that time was taxable to him in

that year. As heretofore noted, he amended his answer to ask for an increased deficiency for 1949, in lieu of that part of the deficiencies determined for 1946 and 1947 which related to the resale of the Carolina Pines property, in the event the Court agreed with that alternative position.

The end result of petitioner's position, as we see it, is that he would "have his cake and eat it too." Section 113 of the Code, as applicable here, plainly provides that the basis of property for purposes of determining gain or loss is "the cost of such property." The only cost which petitioner has paid is the amount of $66,546.75, and that is the only amount which he is entitled to use in computing the amount of gain realized on the resale of the Carolina Pines property during the years in issue. That cost must be allocated to the sales made during such years and the income, if any, which he realized, taxed then. See *Heiner* v. *Mellon*, 304 U. S. 271 (1938).

Petitioner is attempting to add to the cost basis of the property an amount of money which he did not in fact pay during the years in issue. In addition, the $25,000 note would have become null and void if Murchison had breached the agreement. The record does not disclose whether Murchison did or did not breach the agreement, but it does establish that he never asked for an accounting, that no part of such amount was paid up to the time of the hearing, and that, for all we know, it may never be paid. Why there has not been an accounting between petitioner and Murchison, we do not know. The petitioner received the entire amount of the gain realized from the resale of the property; he kept it; he used it as he chose; and it was at all times under his complete control. However, even in the face of those facts, he wants to escape a part of the tax on the amounts which he unquestionably and unconditionally received, by claiming an increased basis because of costs which he never paid. To permit him to do so would give him a wholly unjustified windfall, which the respondent quite properly refused to do.

We do not consider the respondent's alternative argument since we have upheld his original determination of the deficiencies insofar as they relate to the Carolina Pines property. We would say, however, that any result which would allow postponement of the gain realized from the sale of property, under the facts present here, would seem highly questionable in view of the cardinal rule that profits and losses must be accounted for on an annual basis. *Heiner* v. *Mellon, supra; Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359 (1931).

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

MURDOCK and BRUCE, *JJ.*, concur in the result.

FORRESTER, *J.*, concurring: I cannot agree with the rationale of the majority in this case absent a finding that the second lien note was not real and valid, for certainly lien obligations are to be included in tax base calculations.   See *Blackstone Theatre Co.*, 12 T. C. 801, and *Crane* v. *Commissioner*, 331 U. S. 1.

I concur in the result, however, because the amount of the obligation of the second lien note was by its terms contingent, is not ascertainable, and therefore is not includible in cost.

HARRON, *J.*, agrees with this concurring opinion.

---

KERN, *J.*, dissenting: In my opinion petitioner's second lien note was a valid obligation and should be included in the determination of his basis in connection with the property here in question.   See *Blackstone Theatre Co.*, 12 T. C. 801, and *Crane* v. *Commissioner*, 331 U. S. 1.

With regard to the taxable year 1949, when it was apparent that one-half the amount of the net profits was in excess of the face amount of the note, the obligation evidenced by that note was in no way contingent and should clearly be recognized at its full amount as a part of petitioner's cost of the property.   See *Rotorite Corporation* v. *Commissioner*, 117 F. 2d 245.

OPPER, *J.*, agrees with this dissent.