HARRIS CASHMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cashman v. Commissioner
Docket No. 12372-85
United States Tax Court
T.C. Memo 1989-533; 1989 Tax Ct. Memo LEXIS 533; 58 T.C.M. (CCH) 270; T.C.M. (RIA) 89533; September 27, 1989
Richard H. Foster, for the petitioner. Andrew M. Winkler, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: This case was assigned to and heard by Special Trial Judge Joan Seitz Pate pursuant to section 7456(d) [redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1556, 100 Stat. 2755], and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PATE, Special *536 Trial Judge: The Commissioner determined deficiencies in petitioner's Federal income tax of $ 49,667 for the taxable year 1978 and $ 58,796 for the taxable year 1979. These deficiencies result from the disallowance of claimed losses and investment credits arising from petitioner's investment in a book entitled "The Year of December" in 1978 and 1979 and his participation in The Dover Collection (hereinafter "Dover"), a limited partnership involved in the book publishing industry, in 1979. The Commissioner also determined that petitioner is liable under section 6621 for increased interest on the deficiencies for both years. The issues for our decision are: (1) whether petitioner sustained deductible losses and allowable investment credits as a result of his publishing activities in 1978 and 1979; (2) whether petitioner's participation in these activities constituted tax-motivated transactions, subjecting the deficiencies resulting therefrom to an increased rate of interest under section 6621(c) (formerly section 6621(d)); and (3) whether petitioner has maintained this suit primarily for purposes of delay and, is, therefore, liable for damages pursuant to section 6673. *537 This case involves petitioner's participation in two transactions with Jonathan T. Bromwell & Associates, Inc. (hereinafter "Bromwell"), an entity which acquired and marketed mass-market paperback books. This Court has considered similar transactions promoted by Bromwell. Petitioner's acquisition of "The Year of December" follows the pattern of the transactions involved in Elliott v. Commissioner, 84 T.C. 227 (1985), affd. without published opinion 782 F.2d 1027 (3d Cir. 1986), and Ziegler v. Commissioner, T.C. Memo. 1984-620. Petitioner's investment as a limited partner in Dover is, in all material aspects, the same as the limited partnership interest we considered in Leger v. Commissioner, T.C. Memo. 1987-146, affd. without published opinion 860 F.2d 435 (5th Cir. 1988). The parties stipulated most of the record in Leger v. Commissioner, supra, into evidence in this case. Hereinafter, we refer to petitioner's interest in both "The Year of December" and Dover as the "Bromwell offerings" or the "Bromwell transactions." Petitioner, aware of our prior opinions in Elliott *538 , Ziegler, and Leger, does not contest our decisions in those cases; rather, he seeks to distinguish his Bromwell transactions by maintaining that his losses are deductible and investment credits allowable because: (1) petitioner had a bona fide objective of profit; (2) petitioner's investment in 1978 in "The Year of December" is not subject to the at-risk rules; (3) petitioner's investment in "The Year of December" was bona fide; (4) the appraisals prepared by respondent's experts in this case were not based on fact; (5) section 183 does not apply because petitioner made a profit on "The Year of December"; and (6) petitioner suffered a theft loss in 1979 to the extent of his investment in Dover. Because the transactions into which petitioner entered have been fully described in Elliott, Ziegler, and Leger, we include here only a summary of those facts which are peculiar to this case. FINDINGS OF FACT Some of the facts have been stipulated and are so found. We incorporate herein the stipulation of facts and exhibits attached thereto by this reference. Petitioner resided in Las Vegas, Nevada, at the time he filed his petition. Harris Cashman *539 (hereinafter "petitioner") is single. He filed his Federal income tax returns for 1978 and 1979 with the Internal Revenue Service in Ogden, Utah. During the years at issue, he was an executive with Cashman Photo Enterprises, Inc. (hereinafter "Cashman Photo"), receiving a substantial (six figure) annual income therefrom. The company operated photography concessions in hotels and casinos in Las Vegas, Nevada, and Atlantic City, New Jersey. Cashman Photo engaged camera girls, who circulated among customers of the hotels, taking pictures, then selling the photos to the photographed customers. Petitioner started Cashman Photo in 1967 and was joined by his brother, Morgan Cashman (hereinafter "Morgan"), approximately 2 years later. Each brother owns 50 percent of the capital stock. Cashman Photo started operations in Las Vegas and expanded to Atlantic City when gambling was introduced there. Both petitioner and Morgan have high school educations. Neither has had formal training in photography; they learned the trade from their stepfather. Petitioner's duties have centered around the photography end of the business. Morgan is the President of Cashman Photo and has handled most *540 of the financial matters. In addition to their ownership of Cashman Photo, petitioner and Morgan have made other investments over the years. They own a number of pieces of real estate, and owned and operated a gaming school at which instructors trained students to be dealers in gambling casinos. Morgan hired George Swarts (hereinafter "Swarts") to perform accounting services for Cashman Photo. Swarts also provided accounting and tax services to both brothers individually, and acted as their business and tax advisor. Over the years, Swarts became Morgan's friend. Swarts brought the Bromwell offerings to Morgan's attention. Although Swarts had no expertise in the publishing industry, he portrayed the Bromwell offerings as good investments. Neither petitioner nor Morgan read the offering memorandum or any other document evidencing their participation in the Bromwell transactions. Petitioner purchased his interests in the Bromwell transactions on the basis of short phone calls from Morgan, who urged him to make the investments explaining that they were "good deals." Neither petitioner nor Morgan made any serious attempt to investigate the profitability of the proposed transactions. *541 In 1978, petitioner paid $ 45,000 in cash and assumed a nonrecourse promissory note of $ 190,000 to acquire all of the rights, title, and interest in "The Year of December" from Bromwell. As stated earlier, this transaction was structured, in all material respects, in the same manner as the transactions described in Elliott and Ziegler. We incorporate the relevant facts in those cases by this reference. In 1979, petitioner purchased two-thirds of one limited partnership unit in Dover for $ 30,000 in cash. Dover was a limited partnership organized on December 26, 1979, by Madison Library, Inc. (hereinafter "Madison"). Dover had 35 limited partners who paid $ 45,000 cash per unit for their partnership interest. In the aggregate, Dover collected $ 1,147,500 cash in exchange for 25.5 units. Subsequently, Dover acquired 47 books from Bromwell for a total purchase price of $ 12,236,000, paying $ 828,000 in cash and $ 11,408,000 in nonrecourse promissory notes. Shortly before Dover's purchase, Bromwell purchased the books for $ 11,623,000, $ 215,000 in cash and $ 11,408,000 in nonrecourse notes. This transaction was structured, in all material respects, in the same manner *542 as the transaction described in Leger. We incorporate the relevant facts in that case by this reference. OPINION Because petitioner's purchase in 1978 of "The Year of December" was, in all material respects, identical to the transaction described in Ziegler, we turn first to our decision in that case. There we decided that the taxpayer had not engaged in the book publishing activity for profit, and therefore, no deduction in excess of the gross income realized therefrom would be allowed. Sec. 183(a). We also held that no investment credit was allowable under section 38(a) and that the taxpayer was liable for an addition to tax for negligence or intentional disregard of the rules and regulations under section 6653(a). Petitioner has failed to distinguish his transaction from that in Ziegler, and therefore, the reasoning and holding in that case applies equally to his transaction involving "The Year of December." In 1979, petitioner purchased two-thirds of one unit in the Dover partnership. The Dover transaction is essentially the same as the partnership transaction described in Leger. In Leger, we held that the partnership failed to show that it engaged *543 in its activities with an actual and honest objective of making a profit, and therefore, that no deduction in excess of the gross income realized therefrom would be allowed. Sec. 183(a). We also held that the increased rate of interest under section 6621(c) (formerly section 6621(d)) was applicable on that portion of the deficiency attributable to the investment in the partnership. With regard to the Dover collection, petitioner concedes that, based upon the criteria set down in Leger, his transaction was not an activity engaged in for profit under section 183. Therefore, we apply our reasoning and holding Leger to petitioner's interest in the Dover collection. Having found that petitioner has failed to distinguish his case from Ziegler and Leger, we now turn to address petitioner's "new" arguments with regard to his Bromwell transactions. Bona Fide Objective of Profit
Petitioner first contends that he had a bona fide objective of realizing a profit when he entered into the Bromwell transactions. He maintains that he routinely relied upon his brother to recommend good investments, that his brother recommended these investments as "good deals," and *544 then based upon this recommendation, he purchased "The Year of December" and his interest in Dover. Under section 183(a), if an individual's activity is "not engaged in for profit," no deduction attributable to such activity is allowed except to the extent of the income derived from such activity as provided in section 183(b). The test under section 183 is whether the individual engaged in the activity with an actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In this context, "profit" means an economic profit independent of tax savings. Estate of Baron v. Commissioner, 83 T.C. 542, 557-559 (1984), affd. 798 F.2d 65 (2d Cir. 1986); Hirsch v. Commissioner, 315 F.2d 731, 736 (9th Cir. 1963), affg. a Memorandum Opinion of this Court. While a reasonable expectation of profit is not necessary, petitioner's profit objective must be bona fide. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), *545 affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967). In making this determination, objective facts are given greater weight than the parties' statements of their intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). The regulations contain a nonexclusive list of factors to consider in determining whether an activity is engaged in for profit. Briefly, these factors include the following: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer and his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are *546 involved. Sec. 1.183-2(b), Income Tax Regs. No one factor is controlling, but it is an evaluation of all of the facts and circumstances in the case, taken as a whole, which is determinative. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986). In reviewing these factors as they relate to petitioner, it is absolutely clear that petitioner has failed to carry his burden of proof to show that he purchased "The Year of December" with an actual and honest objective of making a profit. With regard to factors (1) and (3) (the time and manner in which the taxpayer carried on the activity), we note that the amount and quality of his participation was minimal. The total time exploring whether "The Year of December" was a "good deal" comprised one short telephone call. Moreover, there is no evidence to show that Swarts investigated the merits of the Bromwell offerings, either on behalf of Morgan or petitioner. This is by far not an adequate investigation of a proposed investment involving the expenditure of $ 45,000 in cash and an indebtedness of $ 190,000. Afterward, except for sending *547 his check to Bromwell, petitioner seems to have had no further interest in the activity. In short, he did not devote any meaningful time to this activity. With regard to factor (2) (the expertise of the taxpayer), petitioner admitted at trial that he had no experience in the book publishing industry and did nothing to seek out such expertise in evaluating his investment. With regard to factor (4) (the expectation that the assets used in the activity may appreciate in value), we find that by amortizing the entire purchase price over a 9-year period petitioner has represented that the book would be worthless at the end of that time period. Further, there is ample evidence in Leger that the useful life of mass market paperback books was considerably less than 9 years. With regard to factor (5) (the success of the activity in carrying on any similar or dissimilar activity), there is no evidence that petitioner ever carried on any type of activity similar to this one, either before or after the years in issue. With regard to factor (6) (the taxpayer's history of income or loss with respect to the activity), we find no evidence of anything but losses. The 7th factor requires *548 us to consider the extent of occasional profits. In this case, there were no profits. The 8th factor focuses upon the financial status of the taxpayer. Although we have no definitive estimate of petitioner's net worth, we do know that he earned a substantial income. In addition, he owned real estate and 50 percent of Cashman Photo. Consequently, it appears that petitioner sought to take advantage of the promised tax benefits offered by Bromwell. With regard to the 9th factor (whether the elements of personal pleasure or recreation were involved), there is no evidence that petitioner read the books he purchased or was interested in purchasing books for their literary content. Therefore, this factor is relatively neutral. However, all of these other facts point to the conclusion that petitioner did not have the requisite profit objective. With regard to Dover, petitioner argues that we should focus on his profit objective rather than that of the general partners as we did in Leger. However, it is well established that, where a partnership is involved, the issue of whether an activity *549 is one engaged in for profit is determined at the partnership level. In making such a determination, we focus on the objective of the general partner since he is the individual who actually controls the partnership's activities. Fuchs v. Commissioner, 83 T.C. 79, 98 (1984); Brannen v. Commissioner, 78 T.C. 471, 505 (1982), affd. 722 F.2d 695 (11th Cir. 1984). We have evaluated the general partner's objective in Leger, and the record in that case was stipulated into this one. Moreover, no additional evidence of the general partner's intent was submitted in this case. Consequently, our analysis remains unchanged. For these reasons, we find that petitioner did not possess the requisite profit objective with regard to either "The Year of December" or Dover. At Risk Rules
Petitioner next argues that since he made his investment in "The Year of December" in 1978, the at-risk rules set forth in section 465 do not apply to him, as the amendment to those rules, which included book publishing activities, did not take effect until 1979. Petitioner's argument is misplaced. *550 Section 465 was enacted as part of the 1976 Tax Reform Act and applies, generally, to losses attributable to amounts paid or incurred in taxable years beginning after December 31, 1975. It was considerably broadened in 1978, effective generally to taxable years beginning after December 31, 1978. Sec. 201, Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2814. For taxable years beginning before 1979 the at-risk rules applied only to certain specified activities to the extent the taxpayer was engaged in the activities as a trade or business or for the production of income. Sec. 465(c)(1). In other words, section 465 does not even come into play unless the activity at issue is one that constitutes either a trade or business or is one that is entered into for the production of income. We made our decision in Ziegler under section 183(a). As we stated earlier, petitioner failed to show any distinction between his activities with regard to "The Year of December" and those in Ziegler. Consequently, we have concluded that his activity regarding "The Year of December" was an activity not entered into for profit. Lacking a profit objective, the activity could not constitute either *551 a trade or business or an activity entered into for profit. Therefore, section 465 simply does not have any application to our determination in this case. Bona Fide Investment
Next, petitioner contends that "The Year of December" was a bona fide investment (not a sham), and, therefore, his losses and investment credit should be allowed. He argues in support thereof that the publisher (Kensington/Hercules) is one of the strongest of the independent publishing houses, that Kable News Co., the distributor, had been in existence for years prior to the years in issue and had distributed other books which wound up on best seller lists, and consequently, that the activities at issue were bona fide. We have no quarrel with his argument that the publishing and distribution of the books was a bona fide activity. In fact, in Leger, we considered that argument as it related to the limited partnership "Arts": Nevertheless, petitioner argues that because its publishers and distributors entered into these activities with a profit objective, Arts necessarily had a profit motive. We do not doubt that Gallen and Kensington entered into their agreements with Arts intending to *552 make reasonable sales efforts on behalf of the 23 titles resulting in a profit for them. In fact the agreements were so structured. However, the publishers were adverse parties to Arts. To maximize their profit, Gallen and Kensington negotiated for as much of the proceeds as they could get, and to the extent they were successful, the proceeds to Arts were reduced accordingly. Therefore, there is no justifiable reason why we should attribute their motives to Arts. [Footnote refs. omitted; 53 T.C.M. 377, 395, 56 P-H Memo T.C. par. 87,146 at 87-723.] This reasoning applies equally to this case. Taking into account that the transaction was bona fide, that the books were published and distributed, and that the publisher/distributor were recognized, established companies in their trade, does not change our determination that petitioner did not have the requisite objective for profit under section 183. As in Leger, we look not to the economic consequences attendant to publishers and distributors, but to the profit potential accruing to petitioner as a purchaser of "The Year of December" and as a limited partner in Dover. The extraordinary purchase price paid by *553 petitioner and Dover coupled with the large amounts of nonrecourse promissory notes involved lead us back to the conclusion that no profit objective existed. Therefore, even though the transaction was bona fide, that fact does not alter our decision with regard to the deductibility of the losses and the allowance of the investment tax credits. Respondent's Experts
Next, petitioner complains that respondent's experts' appraisals were not based on fact, and therefore, their opinions should be given little weight. Part of petitioner's brief is directed toward the argument that respondent's experts did not have the operative documents in front of them upon which to make the appraisals. However, petitioner misapprehends the object of those expert reports. In those reports, the experts attempted to determine the value of the manuscripts which were used to produce the books. They did not attempt to evaluate the transaction Bromwell formulated. Moreover, petitioner misapprehends the nature of this proceeding. In this Court, it is petitioner who has the burden of proof and must show *554 the Court that he is entitled to the claimed losses and investment credits. Petitioner produced no evidence that the books involved were priced at their fair market value or that the arrangement under which they were sold might have been profitable. Such proof, if it had been submitted, would have buttressed petitioner's testimony. We look to objective facts to find petitioner's true objective. Thomas v. Commissioner, 84 T.C. at 1269. Realized Profits
Petitioner further alleges that he realized a profit during 1982, 1983, and 1985 on "The Year of December" and that fact should show conclusively that the activity was engaged in for profit. However, we find no evidence in the record to support the contention that petitioner made a profit from his book publishing activities in any year. If a profit had been made, evidence could have easily been submitted to show that petitioner reported such profits on income tax returns submitted in later years. No such evidence was propounded. On the contrary, petitioner testified that he did not deduct losses he sustained *555 subsequent to 1979. We fail to see how petitioner's brief can even raise this argument. Theft Loss
Finally, petitioner contends that he was a victim of theft with regard to the Dover transaction, characterizing that Bromwell operation as "close to being a scam." He argues, therefore, that he should be entitled to a theft loss for the amount of his investment, citing Nichols v. Commissioner, 43 T.C. 842 (1965), in support thereof. Section 165 generally allows a taxpayer to deduct losses arising from theft of property. Sec. 165(a) and (c)(3). We defined "theft" in Nichols v. Commissioner, 43 T.C. at 884, as follows: Theft, as used in section 165 of the Internal Revenue Code of 1954, is "a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile * * *." There is absolutely no evidence in this record to show that there was any theft, swindle, *556 or misrepresentation on the part of Bromwell or that petitioner gave his money to Bromwell involuntarily. Petitioner got what he intended to buy. See Viehweg v. Commissioner, 90 T.C. 1248, 1254-1255 (1988). Moreover, losses arising from theft are treated as sustained during the taxable year in which the taxpayer discovers the loss. Sec. 165(e); Marine v. Commissioner, 92 T.C. 958, 976 (1989); West v. Commissioner, 88 T.C. 152, 162 (1988). Petitioner testified that during 1978 and 1979 he was looking forward to making a profit from these transactions. Even assuming a "theft" had occurred, by his own testimony he reveals that he had no knowledge of it during the years at issue. Accordingly, the losses claimed by petitioner during 1978 and 1979 cannot be deducted under section 165. Section 6621(c)
The Commissioner determined that petitioner is liable under section 6621(c) (formerly section 6621(d)) for interest on the underpayments for 1978 and 1979 at 120 percent of the statutory rate. That section provides for an increase *557 in the rate of interest payable under section 6601 with respect to a "substantial underpayment" (an underpayment of more than $ 1,000) attributable to a "tax motivated transaction." Certain transactions are deemed to be "tax motivated" by section 6621(c)(3). In addition, the Secretary of the Treasury is given authority to promulgate regulations specifying additional transactions that are to be deemed tax motivated. Sec. 6621(c)(3)(B). Under the regulations, deductions disallowed under section 183 because an activity was not engaged in for profit are attributable to a tax-motivated transaction. Sec. 301.6621-2T, Q-4 & A-4, Temp. Proced. & Admin. Regs., 49 Fed. Reg. 50394 (Dec. 28, 1984). Here, we have found that petitioner engaged in his book publishing activities without a profit objective under section 183. Therefore, it follows that his activities were tax-motivated transactions. Accordingly, we hold that petitioner is liable for additional interest on his 1978 and 1979 tax deficiency attributable to the disallowance of the deductions petitioner claimed arising from the Bromwell transactions. Cf. Patin v. Commissioner, 88 T.C. 1086, 1129 (1987), *558 affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). Next, we consider whether section 6621(c) applies to that portion of the deficiency attributable to the investment credit disallowed by respondent. In this regard, section 6621(c)(3)(A)(i) includes as a tax motivated transaction "any valuation overstatement (within the meaning of section 6659(c))[.]" Under section 6659(c) -- there is a valuation overstatement if the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be). On petitioner's 1978 income tax return he claimed that "The Year of December" had a basis of $ 227,000, which was reduced by a $ 52,000 depreciation *559 deduction to $ 175,000 by the end of the year. On his 1979 income tax return, he further reduced this basis (by claiming $ 45,000 in depreciation) to $ 130,000. In addition, for 1979, Dover claimed a basis in its books of $ 12,236,000 and an adjusted basis at the end of the year of $ 10,876,444. It is generally accepted that where property is acquired by purchase, its cost includes the amount of liabilities assumed, or taken subject to, by the purchaser. Crane v. Commissioner, 331 U.S. 1 (1947); Parker v. Delaney, 186 F.2d 455 (1st Cir. 1950); Blackstone Theatre Co. v. Commissioner, 12 T.C. 801, 804 (1949). That the liability is secured only by the asset transferred and the purchaser otherwise has no personal liability will not, in and of itself, prevent such liability from being included in the basis of the property. Mayerson v. Commissioner, 47 T.C. 340 (1966). However, it is well settled that basis is determined by the actual investment in the property. Siegel v. Commissioner, 78 T.C. 659, 684 (1982); *560 Narver v. Commissioner, 75 T.C. 53, 98 (1980), affd. per curiam 670 F.2d 885 (9th Cir. 1982). Therefore, where nonrecourse indebtedness unreasonably exceeds the fair market value of the acquired property, then no genuine indebtedness exists and there is no "investment in the property" attributable to such indebtedness and the indebtedness is not added to basis. Fuchs v. Commissioner, 83 T.C. 79, 101-102 (1984). Petitioner did not establish the fair market value of the books in this case. Moreover, respondent's experts convinced us that the fair market value of the books was so low that petitioner and Dover had no "investment in the property" to the extent of the nonrecourse indebtedness attributable thereto. Consequently, the adjusted basis of the books shown on petitioner's 1978 and 1979 income tax returns and Dover's 1979 partnership return far exceed 150 percent of the correct amount of adjusted basis. West v. Commissioner, 88 T.C. 152, 164-165 (1987). Accordingly, petitioner is liable for the increased rate of interest provided for in section 6621(c) on the entire deficiencies (resulting from both claimed *561 losses and investment credits) as they constitute substantial underpayments of tax attributable to tax motivated transactions. Damages
Finally, on our own motion, we consider whether we should award damages under section 6673. Damages under that section are awarded to the United States when it appears that an action was instituted or maintained primarily for delay, that the taxpayer's position in such proceedings is frivolous or groundless, or that the taxpayer unreasonably failed to pursue available administrative remedies. Although petitioner has not prevailed on any of his arguments in his attempt to distinguish his case from Ziegler and Leger, we refrain from awarding damages in this case. However, we have decided cases involving Bromwell transactions several times, this time being at least the fourth such case. Therefore, taxpayers are cautioned against unnecessarily tying up this Court again; at least, not without risking untoward effects should we determine such action was frivolous or was instituted or maintained primarily for delay. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩