WILLIAM F. HUMPHREY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68237. Promulgated November 12, 1935.

*Walter E. Barton, Esq., Joseph P. Tumulty, Esq.,* and *R. C. Cushwa, Esq.,* for the petitioner.

*W. F. Gibbs, Esq.,* for the respondent.

446

OPINION.

MURDOCK: The petitioner was on the cash receipts and disbursements basis and could not, under any circumstances, deduct as a loss for 1929 more than he actually paid in that year. A payment of $2,799.84 in cash to the Tunnel Co. was made on July 5, 1929. But that payment was made by the Cattle Co. The petitioner stated that one half of that amount was paid on his behalf. He was not a

stockholder of the Tunnel Co. at that time. The petitioner paid $2,763 in cash to the Tunnel Co. on November 30, 1929. The evidence does not disclose the purpose of either of those payments. The petitioner borrowed $93,358.74 from a bank on his promissory note and paid the money thus borrowed to the Tunnel Co. Of that payment $87,500 represented payment at par for one half of the 1,750 shares of Tunnel Co. stock; $4,605 represented a similar payment for 46.05 shares; and $1,253.74 represented a proportionate part of the interest on the Tunnel Co.'s note for $500,000. The petitioner includes in the amount of the deduction which he claims not only all of the above items, but also an item of $29,472. The petitioner and other stockholders of the Tunnel Co. on July 30, 1929, guaranteed a loan which was made to the Tunnel Co. by a bank on a note of the Tunnel Co. The bank demanded on December 2, 1929, that the stockholders make good their guaranty by paying the unpaid balance of the note in the amount of $160,000. The petitioner's share of this unpaid balance was $29,472. He gave his promissory note to the bank for that amount. That bank then held two of his promissory notes—the one for $93,358.74, above described, and the one just given for $29,472. He combined the amounts of those two notes and gave a new note for the total of $122,830.74 either on the 31st of December 1929 or early in January 1930. Evidence of both dates came from the petitioner's witnesses. There might be considerable doubt as to whether all of these amounts were paid in 1929 and represented losses by one on the cash receipts and disbursements basis. However, the questions thus suggested need not be decided, for reasons which will later appear.

The petitioner advances three different arguments to support his claim that he is entitled to deduct $126,993.66 from his income for 1929 as a loss under section 23(e)(2) of the Revenue Act of 1928.[1] The first argument which he makes is that he became liable under the original agreement of the parties for a certain share of any loss which might result from the construction of the tube; his share of the loss turned out to be $126,993.66; he paid this amount in 1929; the transaction was entered into for profit and therefore he is entitled to deduct the amount in controversy as a loss under section 23(e)(2). He reasons, in this connection, that the Tunnel Co. was a mere agency created for the sole purpose of constructing the tube; the parties to the original agreement contributed to the Tunnel Co.

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
  In computing net income there shall be allowed as deductions:
    *     *     *     *     *     *     *
  (e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
    *     *     *     *     *     *     *
  (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

only what they would have been required to pay if the corporation had never been organized; therefore the corporate entity of the Tunnel Co. should be disregarded.

The petitioner originally entered into the transaction for profit and agreed to share a portion of any loss which might result. In the end he assumed, and probably paid, his share of the loss which resulted from the construction of the tube. But between the original agreement and the ultimate payment of the loss a number of transactions having tax significance intervened. Those intervening transactions can not be ignored. The original parties to the venture formed a corporation. The contract to construct the tube was turned over to that corporation. The corporation actually constructed the tunnel and sustained the loss. Furthermore, it paid for the loss. The petitioner subscribed for stock of that corporation. Instead of paying cash for the stock at the time of his subscription his associate gave a note in the amount of $175,000 to the corporation. That note represented merely a promise to pay. Later, for reasons satisfactory to the petitioner and his associate, they ceased to be stockholders of the corporation and allowed the shares which they had previously owned to become the property of the Cattle Co. The Cattle Co. gave its note to the corporation for $175,000. The evidence does not show that the note given by McCarthy was surrendered, but certainly the petitioner can derive no benefit from the lack of proof in regard to what became of that note. The note was never paid. If he remained liable on that note he should have proven the facts to show his liability. If any inference were to be drawn, the natural one would be that McCarthy's note was surrendered when the note of the Cattle Co. was received by the Tunnel Co. In any event the Cattle Co. became the owner of the stock and the petitioner ceased to be the owner of any stock in the Tunnel Co. The Cattle Co. was the owner of the Tunnel Co. stock when that stock became worthless. Thereafter the petitioner reacquired some of the stock of the Tunnel Co. from the Cattle Co. and voluntarily assumed liability thereon for a proportionate part of the loss of the Tunnel Co. There is no sound reason in this case for disregarding the corporate entity of the Tunnel Co., the acts and circumstances surrounding its creation and existence, or the fact that its stockholder, at the time the loss was sustained and its stock became worthless, was the Cattle Co., not the petitioner. The following statement of the Supreme Court in *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415, is apposite: " While unusual cases may require disregard of corporate form, we think the record here fails to disclose any circumstances sufficient to support the petitioner's claim. Certainly the Improvement Company and the estate were separate

and distinct entities; the former was avowedly utilized to bring about a change in ownership beneficial to the latter." Consequently the first argument advanced by the petitioner is rejected as unsound.

The petitioner next argues that he and McCarthy were at all times the owners of 1,750 shares of stock of the Tunnel Co. and were at all times personally responsible for their proportionate part of the 250 shares which were held in trust; the Cattle Co. never owned any of the stock; and, therefore, he is entitled to deduct a loss of $126,993.66, representing his investment in the stock of the Tunnel Co. which became worthless in 1929. This contention is not supported by the facts. The petitioner and McCarthy originally subscribed for 1,750 shares of stock. They did not pay for this stock in cash, but merely gave a note whereby they promised to pay $175,000 in the future. The note was never paid. They never received a certificate for the shares. The Cattle Co. acquired the 1,750 shares in question in 1926. It did not pay cash at that time, but gave its promissory note for $175,000 to the Tunnel Co. It was the actual owner of the 1,750 shares of stock when those shares became worthless. Although the petitioner's contention finds some support, the evidence as a whole does not justify a finding that the Cattle Co. held the stock merely as nominee, or that it held the stock in any other fiduciary capacity. Two hundred and fifty shares of Tunnel Co. stock were held in trust. The trustee was changed from time to time. When the stock became worthless the stockholders of the Tunnel Co. other than the trustee were liable for the entire loss which the Tunnel Co. had sustained. The Tunnel Co. then called upon its stockholders to pay for their stock. The petitioner had ceased to own any interest in the Tunnel Co. prior to that call for payment of the subscription price and prior to the time that the Tunnel Co. stock became worthless. The record does not show that the Cattle Co. was unable to shoulder its entire responsibility as a stockholder of the Tunnel Co. If it had paid its share of the loss the petitioner would have had no loss to pay. The petitioner is not entitled to deduct the loss which he claims on the theory that at all times he was the owner of one half of a 35/95 interest in the Tunnel Co.

He maintains, as a sort of alternative to this second contention of his, that he is entitled to deduct the amount in question as the cost of the Tunnel Co. stock, even if it be held that he and McCarthy purchased the 1,750 shares from the Cattle Co. in July 1929. The acquisition by the petitioner of the Tunnel Co. stock from the Cattle Co. in July 1929 was not a transaction entered into for profit. He was fully aware before he entered into that transaction that it would

not result in a profit, but, on the contrary, would make him liable for a part of the loss sustained by the Tunnel Co. in the construction of the tube. Any loss from that transaction would not be deductible under section 23 (e) (2), since it was not sustained in a transaction entered into for profit. Neither would it be deductible under section 23 (e) (1), since it was not a loss sustained in connection with the petitioner's trade or business. No effort was made to show what the petitioner's trade or business was. He has not shown and he does not claim that the loss was sustained in connection with his trade or business. The Cattle Co., as owner of the Tunnel Co. stock in July 1929, was liable for 35/95 of the loss sustained by the Tunnel Co. in the construction of the tube. The petitioner, by voluntarily assuming one-half of the liability of the Cattle Co. on account of the loss of the Tunnel Co. did not become entitled under section 23 (e) to any deduction from his income tax.

The petitioner's final argument is that he was liable as a stockholder of the Cattle Co. for one half of the indebtedness of the Cattle Co. on its note for $175,000 which it had given to the Tunnel Co.; he assumed and paid one half of the debt and interest, or $88,753.74; his investment in the Cattle Co. was a transaction entered into for profit; and he is entitled to deduct $88,753.74 as a loss sustained by him in a transaction entered into for profit. The parties agree that in California a stockholder is liable for his proportionate part of the debts of the corporation in which he owns stock contracted during the period of his stockholding. Nevertheless, the petitioner is not entitled to deduct any amount on this theory. The Cattle Co. was liable for its debt to the Tunnel Co., and if the Cattle Co. was unable to pay that debt, such fact does not appear in this record. If he paid the amount in question because he held one half of the stock in the Cattle Co., that payment was a voluntary one on his part and merely served to increase the basis for gain or loss in his hands of the Cattle Co. stock. *Warren E. Burns*, 11 B. T. A. 524; affd., 31 Fed. (2d) 399; certiorari denied, 280 U. S. 564; *J. S. Maubaules*, 20 B. T. A. 359. The cost of the Cattle Co. stock to the petitioner has not been shown. There is no evidence to indicate that the Cattle Co. stock was worthless in 1929. The petitioner still held his stock in the Cattle Co. at the end of 1929. His investment in the stock of the Cattle Co. may have been a transaction entered into for profit, although there is no proof on that point. Since the Cattle Co. stock was not worthless in 1929 and was not disposed of by the petitioner in 1929, no gain or loss for 1929 based upon his investment in the Cattle Co. stock can be computed for that year. The additional amount which he

invested in the stock of the Cattle Co. by paying the $88,753.74 will be taken into consideration in computing his gain or loss when he disposes of his Cattle Co. stock. The petitioner has not claimed the right to deduct more than $88,753.74 on this theory. However, the Tunnel Co. sustained its entire loss while the Cattle Co. was a stockholder. The Cattle Co. was liable as a stockholder of the Tunnel Co. for the latter's indebtedness. If the petitioner were to argue that as a stockholder of the Cattle Co. he was liable for a part of this additional indebtedness and for the loss which its payment represented to him, the answer would be that any payment which he made in this connection would likewise represent additional investment in the stock of the Cattle Co. Thus on no theory that has been suggested would the petitioner be entitled to deduct the loss which he claims.

The petitioner originally joined with others in a joint venture. At that time he was in position to become liable for a share of any future losses of the venture, as well as to share in its future profits. The form for carrying out the venture was changed when the individuals organized the corporation and transferred to it the contract for the construction of the tube. There was no longer a joint venture with individual liability for future loss and individual rights to future gains. Thereafter it was a corporate venture. The petitioner ceased to be a stockholder in the Tunnel Co. Thereafter he was no longer responsible, on his original agreement, for any future losses sustained in the construction of the tube. The original parties to the venture, prior to the organization of the corporation, also made themselves personally liable to the parties who deposited cash for the protection of the indemnity company, and they also made themselves liable to the parties who gave their personal bonds for the protection of the depositors of the cash. The liability thus created may have persisted until and throughout 1929. However, the depositors of the cash lost nothing, those who gave their personal bonds were not called upon to make good any loss of the depositors, and the petitioner was not called upon to indemnify the ones who had given their bonds. Thus he sustained no loss as a result of those original agreements. The Tunnel Co., in taking over the contract for the construction of the tube, agreed to indemnify and hold harmless the general contractor. The loss of the Tunnel Co. was paid without recourse to the bonds or deposits made before it was organized. The Cattle Co., as one of the stockholders of the Tunnel Co., was liable for its share of the loss of the Tunnel Co. There is nothing in the record to indicate that it was not at all times able to meet

its obligations. It thus stood between the petitioner and any possible loss on his part. But the petitioner voluntarily assumed a part of the liability of the Cattle Co. to the Tunnel Co. The revenue act, however, does not permit the transfer of a loss of a corporation to its stockholders under such circumstances.

Deductions are purely statutory and if no specific authorization can be found in the statute no deduction can be taken. The Board is not called upon at this time to decide whether or not the Cattle Co. might be entitled to deduct a loss. The plan whereby the Cattle Co. became a stockholder in the Tunnel Co. was designed to serve useful purposes of the petitioner and McCarthy. If the Tunnel Co. had made a profit on the construction of the tube, the Cattle Co. could have received its share of the profit tax free as dividends. Since the Tunnel Co. sustained a loss, it is to the petitioner's advantage to disregard his act of substituting the Cattle Co. for himself as a stockholder. Having voluntarily made the Cattle Co. the stockholder for the benefits which that step offered, he must likewise accept its inherent disadvantages. *Burnet* v. *Commonwealth Improvement Co., supra.*

*Decision will be entered for the respondent.*