WERNER GRAF AND MARGUERITE GRAF, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MOHAMMAD AND RASHIDA SHAFI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7888–80, 9149–80.     Filed May 18, 1983.

*Nelson S. Weine*, for the petitioners.
*Robert R. Rubin* and *James F. Kidd*, for the respondent.

OPINION

FAY, *Judge*: Respondent determined the following deficiencies in petitioners' 1977 Federal income tax:

| Docket No. | Deficiency |
|---|---|
| 7888–80 | $33,841.00 |
| 9149–80 | 20,771.22 |

These cases are consolidated for purposes of trial, briefing, and opinion. Petitioners in docket No. 9149–80 are presently before the Court on respondent's motion for partial summary judgment under Rule 121.[1] The only issue raised by respondent's motion is whether a deduction is allowable with respect to a $30,000 payment by note for certain dredging services allegedly performed in Panama.

Petitioners in docket No. 9149–80, Mohammad and Rashida Shafi, resided in Bayside, Wis., when they filed their petition herein.

Petitioner Mohammad Shafi (hereafter petitioner) is a physician practicing medicine in Wisconsin. In 1977, he entered a tax shelter promoted by the International Monetary Exchange (IME), a Panamanian corporation. Petitioners agree the exhibits attached to respondent's motion accurately reflect the transaction herein. The tax shelter is structured as follows.

Petitioner contracts to provide dredging services to a Panamanian landowner, Diversiones Internationales, S.A. (DISA), for the purpose of developing oceanfront lots. Petitioner then subcontracts with a local Panamanian firm, "Dredgeco," to do the actual work. The cost of dredging is $40,000. The promoter, IME, finances 75 percent of this cost. Thus, petitioner pays $10,000 cash and delivers a $30,000 note to IME wherein IME then pays "Dredgeco" the entire $40,000 which is due before the actual dredging begins. Interest on the $30,000 note accrues at the rate of 10 percent per annum beginning January 1, 1978.

Upon completion, DISA is to pay petitioner $50,000 for his services. Any unpaid balance is to be assessed interest at 6

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure.

percent per annum. However, the $50,000 amount due petitioner is payable only out of one-half the profits generated by the sale of oceanfront lots created by the dredging services. In turn, and crucial to this case, petitioner is obligated to make payments on his note only out of 75 percent of his share of such profits.

In 1977, petitioner sent a $10,000 check and delivered his $30,000 promissory note to IME. On their 1977 Federal income tax return, petitioners claimed a $40,000 deduction. In his notice of deficiency, respondent disallowed the deduction in its entirety.

This case is but one of numerous similar tax shelter cases promoted by IME which are docketed in this Court. In his motion for partial summary judgment, respondent asks us to rule as a matter of law that petitioners are entitled to no deductions with respect to their payment by giving the $30,000 note.

For purposes of this motion, respondent accepts as true the facts in favor of petitioner. For example, respondent is willing to assume that $40,000 was in fact paid to "Dredgeco" for dredging services and that, to the extent otherwise allowable, this payment constitutes a deductible, as opposed to a capital, expense. Respondent's position is that, notwithstanding the truth of these assumptions, petitioners still are entitled to no deduction with respect to the $30,000 note.

It is well-established that a party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists, and that he is entitled to judgment as a matter of law. *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970); *Gulfstream Land & Development v. Commissioner*, 71 T.C. 587, 596 (1979). This Court has entertained motions for summary judgment where, for purposes of such motion, the moving party concedes certain facts and relies on his legal theory. See *Jacklin v. Commissioner*, 79 T.C. 340 (1982); *McLain v. Commissioner*, 67 T.C. 775 (1977). Given "its salutary purpose in avoiding a useless, expensive, and time consuming trial where there is no genuine, material fact issue to be tried" *Lyons v. Board of Ed. of Charleston, etc.*, 523 F.2d 340, 347 (8th Cir. 1975), such a motion can be particularly appropriate in a case such as the one before us.

At first blush, it would appear conclusive that petitioners, as

cash basis taxpayers, would be entitled to no deduction with respect to their payment by note. It is well settled that the payment of an expense by a note does not give rise to a deduction for a cash basis taxpayer. *Helvering v. Price,* 309 U.S. 409 (1940); *Eckert v. Burnet,* 283 U.S. 140 (1931). Petitioners' whole case, however, is based on the theory that all amounts advanced by IME for dredging services are tantamount to loans from which petitioner made the requisite cash payment. For the following reasons, we are unwilling to allow petitioners a deduction for expenses paid out of such advances.[2]

It is well settled that a taxpayer cannot include a contingent liability in his cost basis for purposes of computing depreciation or amortization deductions. *Denver & Rio Grande Western R. R. Co. v. United States,* 205 Ct. Cl. 597, 505 F.2d 1266 (1974); *Lemery v. Commissioner,* 52 T.C. 367 (1969), affd. on another issue 451 F.2d 173 (9th Cir. 1971); *Columbus & Greenville Railway Co. v. Commissioner,* 42 T.C. 834 (1964), affd. per curiam 358 F.2d 294 (5th Cir. 1966); *Albany Car Wheel Co. v. Commissioner,* 40 T.C. 831 (1963), affd. per curiam 333 F.2d 653 (2d Cir. 1964); *Redford v. Commissioner,* 28 T.C. 773 (1957). Contingent liabilities have also been held to preclude a current deduction for intangible drilling costs. *CRC v. Commissioner,* 693 F.2d 281 (3d Cir. 1982), revg. on different grounds *Brountas v. Commissioner,* 73 T.C. 491 (1979); *Brountas v. Commissioner,* 692 F.2d 152 (1st Cir. 1982), revg. on different grounds 73 T.C. 491 (1979); *Gibson Products Co. v. United States,* 637 F.2d 1041, 1047 (5th Cir. 1981).

In *Denver & Rio Grande Western R. R. Co. v. United States, supra,* the United States Court of Claims granted the Government's motion for partial summary judgment and held, as a matter of law, that the taxpayer could not include in its cost basis contingent liabilities incurred to finance construction of a railroad line. The taxpayer agreed to construct a 39-mile spur line to provide rail service to a potash mine located in Moab, Utah. Even though all the funds necessary to build the line were advanced on behalf of the taxpayer, the taxpayer's obligation was contingent on the shipping of sufficient potash.

---

[2] Any reference in this opinion to "loan" or "lender" is for purposes of discussion only and is meant to carry no legal significance.

The Court held that absent a binding obligation on the part of the taxpayer to repay all such advances, it was "impossible to value the obligation assumed." *Denver & Rio Grande Western R. R. Co. v. United States*, 205 Ct. Cl. at 603, 505 F.2d at 1270. The Court noted that innumerable happenings could prevent repayment, e.g., strikes or labor shortage, reduced demand, or advanced mining technology rendering the mine obsolete. Thus, the Court held the obligation could not be included in the taxpayer's cost basis.

Similarly, the loan herein is utterly and inherently so contingent and speculative that its repayment cannot be predicted with any degree of accuracy. Payable solely out of profits, it is wholly contingent upon the success or failure of the foreign dredging operation. Thus, not only do oceanfront lots first have to be produced, but those lots have to be sold at a profit before any payments on the loan are required. And then, only 50 percent of those profits are subject to payment on the note. Given the terms of this agreement and given the clearly abusive tax shelter out of which this case arises, we find petitioner's obligation is so contingent that it cannot be treated as a loan for tax purposes.[3]

We do not imply that a loan will not be recognized for tax purposes simply because it is payable solely out of profits. By its nature, however, such a loan necessarily takes on the flavor of an investment.[4] Only when, in an objective sense, there is a reasonable certainty that full repayment will occur will such a loan be recognized. See and compare *Harlan v. United States*, 409 F.2d 904, 909 (5th Cir. 1969); *Ortmayer v. Commissioner*,

---

[3]The subsequent performance of the venture does nothing but confirm the highly contingent and speculative nature of petitioner's obligation. Petitioner received no payments for dredging fees in 1977, 1978, and 1979, and the record discloses no profits from land sales at any time prior to trial. By letter dated Aug. 22, 1979, petitioner was informed by IME that shallow salt water lakes had been formed by the dredging services and that DISA had agreed to pay 25 percent of its gross sales from shrimp which were being harvested in these salt water lakes. Petitioner's exhibits include a canceled check dated June 30, 1980, and a letter from IME dated July 14, 1980, indicating petitioner's share of shrimp proceeds for 1980 was $7.18, such amount being used to reduce the amount owed IME.

[4]See *Hartman v. Commissioner*, T.C. Memo. 1958-206, wherein repayment of a "loan" was to be from profits with no unconditional obligation to repay. The "creditor" was held to be in reality a joint venturer.

265 F.2d 848, 855 (7th Cir. 1959), revg. on this issue 28 T.C. 64 (1957).

Petitioners contend that cases which deal with the computation of cost basis are irrelevant to the consideration of the deduction of a current expense.[5] They argue the deductibility of an expense paid by a cash basis taxpayer does not depend on the source of the funds expended but, instead, depends solely on how payment is made. Petitioners argue respondent is attempting to apply rules of an accrual basis taxpayer to a cash basis taxpayer. Petitioners reason that since the expense was paid, they are entitled to the deduction. Thus, petitioners argue the treatment of the note herein is irrelevant. We disagree.

We see no reason why a taxpayer is in any better position simply because he claims a current deduction as compared to an increased cost basis. The only difference lies in the nature of the expense, generally speaking, whether the expense creates an asset with a useful life greater than 1 year. Thus, those cases which do not recognize a note or an obligation for purposes of computing the basis of an asset are equally applicable when the taxpayer is claiming a current expense. An expenditure funded with the proceeds of a contingent obligation represents neither a payment by, or cost to, a taxpayer for tax purposes.[6]

---

[5] See also *Estate of Franklin v. Commissioner*, 64 T.C. 752 (1975), affd. 544 F.2d 1045 (9th Cir. 1976); *Narver v. Commissioner*, 75 T.C. 53, 98 (1980), affd. per curiam 670 F.2d 855 (9th Cir. 1982), where if the principal amount of the purchase price and the amount of the nonrecourse note unreasonably exceed the fair market value of the property securing the note, the face amount of the note will not be included in the cost basis.

[6] Petitioner's affidavit states, "It * * * is my understanding that the loan * * * was to be paid from the proceeds of the sale of dredged lots in Panama." Petitioners admit that if an obligation is contingent, it is not to be treated as debt for purposes of generating a current deduction. They argue, however, the obligation herein is not contingent. Conceding payment of this obligation is contingent, petitioners draw a distinction between contingency of payment and contingency of obligation, claiming only the latter affects the status of debt for tax purposes. Since the obligation herein is not subject to reduction, petitioners argue the obligation, itself, is not contingent. We find no merit in petitioners' contention.

We fail to see how an obligation is any less contingent simply because it remains a fixed dollar amount and is not subject to reduction. Simply put, if the obligation to pay never arises, the obligation itself is meaningless. For the same reasoning, see *Lemery v. Commissioner*, 52 T.C. 367 (1969), affd. on another issue 451 F.2d 173 (9th Cir. 1971), wherein under similar circumstances in which the obligation to pay extended only out of net profits, we held the obligation, as well as the payment, was contingent. *Lemery v. Commissioner*, supra at 378.

We find considerable support for our conclusion in three recent Courts of Appeals' decisions which disallowed current deductions for intangible drilling costs paid with a nonrecourse note. *CRC v. Commissioner*, 693 F.2d 281 (3d Cir. 1982), revg. on different grounds *Brountas v. Commissioner*, 73 T.C. 491 (1979); *Brountas v. Commissioner*, 692 F.2d 152 (1st Cir. 1982), revg. on different grounds 73 T.C. 491 (1979); *Gibson Products Co. v. United States*, 637 F.2d 1041 (5th Cir. 1981).[7] Although each of these cases involved accrual basis taxpayers, whereas we are dealing with a cash basis taxpayer, their reasoning is not so limited and, in our opinion, applies equally to cash basis taxpayers. Again, it is precisely the contingent nature of the obligation itself that these courts regard as the precluding factor. As the First Circuit Court of Appeals stated:

these decisions must reflect an administrative fact—namely, the fact that it is simpler, when faced with obligations to pay that are highly uncertain, to wait and see if the contingency occurs. [*Brountas v. Commissioner*, 692 F.2d 152, 158 (1st Cir. 1982).]

Moreover, recognizing there is a danger in treating all nonrecourse loans as the equivalent of true loans for tax purposes, the Fifth Circuit Court of Appeals stated:

the transaction may be so lacking in the essential characteristics, economic realities, and financial expectations of a true lending transaction as to call for reclassification of the transaction as one other than a loan and ascribing to it consequences for tax purposes other than those growing out of a true loan. [*Gibson Products Co. v. United States*, 637 F.2d 1041, 1047 (5th Cir. 1981), quoting "Fielder, 'Drilling Funds and Nonrecourse Loans—Some Tax

---

[7]In *Brountas v. Commissioner*, 73 T.C. 491 (1979), revd. 692 F.2d 152 (1st Cir. 1982), this Court held a taxpayer was entitled to deductions for intangible drilling costs with respect to a nonrecourse loan irrespective of the highly contingent nature of the loan. The basis for our decision in *Brountas* is sec. 636 which provides that production payments be treated as loans. Since the nonrecourse loan in *Brountas* was economically equivalent to a production payment, we held the statute required the nonrecourse loan to be a true loan for all purposes. No similar statute is involved in this case; thus, our opinion in *Brountas* does not control. Nevertheless, language in our opinion in *Brountas* supports our position:

"Leaving aside for the moment the provisions of section 636, we would consider it highly doubtful that a pre-drilling production payment on an exploratory or so-called wildcat well, even when cross-collateralized with other wildcat wells, or any similar nonrecourse, highly contingent obligation would be a 'liability' for purposes of section 752(a). [*Brountas v. Commissioner*, 73 T.C. at 559.]"

We note that our citations and discussions of the opinions of the Circuit Courts of Appeal in *CRC*, *Brountas*, and *Gibson Products* do not imply that we necessarily accept their views as to the role of sec. 636—the section upon which our decision in *Brountas* was founded.

Questions,' 24th Southwestern Legal Foundation Inst. on Oil & Gas Taxation 527, 537 (Matthew Bender & Co. 1973)."]

The Court noted that in a true lending transaction, there exists the reasonable likelihood the lender will be repaid, and further quoting Fielder, *supra*, the Court held there must be "a reasonable basis for the prediction that the ability of the borrower to repay will not be wholly or substantially contingent upon the success or failure of the business venture." *Gibson Products Co. v. United States, supra* at 1047, quoting Fielder. Thus, since the partnership could foresee not repaying the loan unless the wildcat wells produced oil and gas, the Fifth Circuit Court of Appeals further held the nonrecourse note could not be considered a true loan for tax purposes.

In the instant case, the lender will not be paid until, and unless, profits from the venture are realized, and repayment is totally contingent on the success or failure of the enterprise. This is wholly inconsistent with a true lending transaction where the lender does not undertake to assume the entrepreneurial risks of the business.

Petitioners attempt to distinguish *Gibson Products* on the basis of the net worth of the respective debtors involved. Petitioners point out they owned assets with a value far in excess of the amount of their indebtedness whereas the debtors in *Gibson Products* held assets lower in value than the nonrecourse note. The distinction petitioners make finds support in *Gibson Products* wherein the Fifth Circuit Court of Appeals stated:

> The single most important factor dictating our conclusion that the transaction * * * was not a true loan is the fact that the total combined assets of both joint venturers were not sufficient to pay the note on or before the maturity date, even if [the debtors were] so inclined, absent production from any of the leases. [*Gibson Products Co. v. United States, supra* at 1047.]

We are, however, unwilling to ascribe any importance to petitioners' net worth in this case. The fact remains the obligation is payable only out of the profits of this foreign dredging operation. Such a loan must be evaluated only on the basis of the probability of any such profits. Certainly, the funds were not advanced on the basis of petitioners' net worth,

and absent the existence of profits, the lender could not reach petitioners' personal assets.[8] Thus, petitioners' net worth and ability to pay are simply irrelevant considerations. Moreover, the subjective intent of the debtor to repay and the subjective expectation of the lender to be repaid are likewise irrelevant. *Denver & Rio Grande Western R. R. Co. v. United States*, 205 Ct. Cl. 597, 603, 505 F.2d 1266, 1270 (1974). It is mere conjecture that a taxpayer will make payments when he is not so obligated.

Cases supporting the proposition that a deduction be allowed for expenses paid with money borrowed from a third party are clearly distinguishable. See *Granan v. Commissioner*, 55 T.C. 753 (1971); *Royal Oak Apartments, Inc. v. Commissioner*, 43 T.C. 243 (1964); *Segall v. Commissioner*, 30 T.C. 734 (1958); *McAdams v. Commissioner*, 15 T.C. 231 (1950), affd. 198 F.2d 54 (5th Cir. 1952). In each of these cases, the taxpayers borrowed money to pay expenses they were legally obligated to pay in the year the expenses were incurred. And in each case, the taxpayer was personally liable for the debt, repayment was subject to no contingencies, and there was little doubt the debt would in fact be paid. To the contrary, petitioner's obligation is entirely contingent on future profits, and absent such profits, petitioners will incur no liability, personal or otherwise.[9] Furthermore, the rationale for these cases is that taxpayers should not be able to elect the year in which expenses can be deducted from income. *Granan v. Commissioner, supra* at 755. However, the concern in this case is not whether there is room for manipulation of the taxable year of taking the deduction; rather the concern is whether the highly contingent note will ever be paid off.

The recent United States Supreme Court opinion in *Commissioner v. Tufts*, 461 U.S. ___(1983), does nothing to change the result herein. In upholding the position of this Court in *Tufts v. Commissioner*, 70 T.C. 756 (1978), the United States

---

[8]We accept petitioners' contention that the note herein was not nonrecourse in the sense that personal assets could be reached once profits were realized and an obligation to pay therein arose.

[9]We do not suggest the absence of personal liability means the debt cannot be recognized for tax purposes. See *Commissioner v. Tufts*, 461 U.S. ___(1983); *Crane v. Commissioner*, 331 U.S. 1 (1947). See also discussion *infra*.

Supreme Court held that when a taxpayer disposes of property encumbered by a nonrecourse obligation exceeding the fair market value of the property, the Commissioner may require him to include in the "amount realized" the outstanding amount of the obligation. The Supreme Court held that, in that context, the nonrecourse obligation should be treated as a true loan. The decision ultimately rests on the Commissioner's treatment of the tax consequences of property subject to such an encumbrance and over 35 years of judicial sanction of such treatment beginning with *Crane v. Commissioner, supra.* As the Supreme Court stated:

We read *Crane* to have approved the Commissioner's decision to treat a nonrecourse mortgage in this context as a true loan. [*Commissioner v. Tufts*, 461 U.S. ___, ___.]

The facts and the situation presented herein simply do not come within the context of *Tufts* or *Crane.*

We find no genuine issue as to any material fact. The terms of the agreements and the exhibits attached to respondent's motion accurately reflect the transaction and the undertakings of the principals herein, and substantive legal principles warrant an opinon in respondent's favor.[10] We have no trouble concluding that, by its very terms, petitioner's obligation is too contingent and speculative to give rise to a current deduction.[11]

As such, this case is governed by the fundamental principle of taxation that payment of an expense by note does not give rise to a deduction by a cash basis taxpayer. *Helvering v. Price,* 309 U.S. 409 (1940); *Eckert v. Burnet,* 283 U.S. 140 (1931). And this case falls precisely within the rationale of this principle in that the concern here is that "the note may never be paid, and

---

[10]Petitioners make no argument, and there is no basis for such an argument, that IME advanced the funds as the agent for petitioner.

[11]We are not herein concerned with the situation where the lender has made a clearly identifiable transfer of funds in a loan transaction entirely separate and distinct from payment of the expense. See *Island Gas, Inc. v. Commissioner,* 30 T.C. 787 (1958).

See also *Humphrey v. Commissioner,* 91 F.2d 155 (9th Cir. 1937) (Haney, J., dissenting) revg. 33 B.T.A. 442 (1935), wherein Judge Haney in his dissenting opinion would, under the authority of *Eckert v. Burnet,* 283 U.S. 140 (1931), disallow the deduction on the much broader grounds that a cash basis taxpayer is entitled to no deduction until he pays the note since only then has he made an out-of-pocket expense. Thus, Judge Haney would not even bother with whether the advance herein constituted a true loan for tax purposes or whether the obligation was contingent.

if it is not paid, the taxpayer has parted with nothing more than his promise to pay." *Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 578 (1977), quoting *Hart v. Commissioner*, 54 F.2d 848, 852 (1st Cir. 1932). Thus, we hold petitioners are not entitled to any deduction in 1977 with respect to their note.[12] See *Saviano v. Commissioner*, 80 T.C. 955 (1983), decided this day where this Court reached the same conclusion on similar facts.

Petitioners' final attack on respondent's motion is strictly on procedural grounds. On March 2, 1981, these two dockets were consolidated for purposes of trial, briefing, and opinion. However, respondent's motion for partial summary judgment is directed only to petitioners in docket No. 9149–80. Petitioners urge this Court to decide the two cases together, rather than allow respondent to concede certain facts in one docket and, if he loses his motion, attempt to adjudicate those facts in the other docket. We decline petitioners' request.

As we have already noted, motion for summary judgment is appropriate where further expensive and time-consuming litigation can be prevented. Moreover, respondent has conceded facts only for purposes of this motion. If he lost, he certainly did not preclude himself from litigating those facts. We see no merit to petitioners' contention that respondent has garnered some form of unfair advantage by this maneuver.

Whether such a motion should be entertained is entirely within the discretion of the Court. We see no prejudice to petitioners in either docket, and the benefits are obvious. Accordingly, even though respondent's motion is directed to

---

[12]Our determination with respect to the $30,000 note is based on the terms of the agreement. Petitioner's purpose for entering this tax shelter is largely irrelevant for this determination. However, we are not oblivious to the fact that, as structured, petitioners are in a "no lose" situation. Petitioner has expended $10,000 to generate $40,000 in deductions which, in his tax bracket (he reported taxable income of $136,311 on his 1977 return) guarantees tax savings greater than his cash outlay. Moreover, petitioner is guaranteed never to have to "pony up" any amount in excess of his $10,000 outlay. Whether petitioners are entitled to a deduction with respect to the $10,000 out-of-pocket-expense on the basis of any legitimacy to this venture or whether no deduction is allowable since there was absolutely no substance to the transaction and it was entered into solely for the purpose of avoiding taxes is a question that must be answered in another proceeding. See *Houchins v. Commissioner*, 79 T.C. 570 (1982).

petitioners in one of two consolidated dockets, the Court deems it proper to entertain such motion.[13]

To reflect the foregoing,

*An appropriate order will be entered.*

---

[13]See Rules 141(b) and 61(b) where the Court may, in its discretion, order a separate trial of a group of consolidated cases and may limit the trial to the claim or claims of one party.