ROBERT NANCE, JR. and BARBARA L. NANCE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nance v. Commissioner
Docket No. 15760-81.
United States Tax Court
T.C. Memo 1983-687; 1983 Tax Ct. Memo LEXIS 104; 47 T.C.M. (CCH) 337; T.C.M. (RIA) 83687; November 17, 1983. Clarence J. Ferrari, Jr.,Edward M. Alvarez, and JohnM. Stinar, for the petitioners. M. K. Mortensen, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1976
$1,356
1977
8,303
1978
6,217
This case is presently before the Court on respondent's motion for summary judgment, and petitioners' cross-motion for partial summary judgment, under Rule 121. [1] The issues raised by respondent's motion are (1) whether respondent properly disallowed all depreciation deductions claimed by a certain partnership in 1977 and 1978, and (2) whether respondent properly disallowed all research and development expenses claimed *105 by that same partnership in 1976. Petitioners' cross-motion for partial summary judgment pertains only to the latter issue. The parties have submitted an extensive stipulation of facts with exhibits. Petitioners have also filed affidavits with exhibits in support of their position. The pleadings, stipulations, exhibits, and affidavits contain the facts used for the purpose of ruling of the motions herein. See Rule 121(b). Petitioners, Robert Nance, Jr. and Barbara L. Nance, resided in Sacramento, Calif., when they filed their petition herein. The issues herein arise out of the acquisition by Fred F. Solomon, Jr. (Solomon) of all the rights and interests in a garbage disposal device designed to operate solely by water pressure (herein the patent) and the transfer of the patent to Aqua Turbo Disposal Limited (herein sometimes referred to as either Aqua Turbo or the partnership), a limited partnership in which petitioner Robert Nance, Jr. (Robert) owned a 2 percent interest as a limited partner. Although a United States patent was not obtained until September 27, 1977, Solomon acquired the patent *106 from the inventors for $20,000,000 pursuant to a purchase agreement dated December 14, 1976 (herein the purchase agreement). Solomon agreed to make a downpayment of $50,000, see n. 3, infra, with the balance of $19,950,000 payable out of 50 percent of the profits earned from the exploitation or sale of the patent until December 31, 1992. At that time one-half of the outstanding balance would become due, with the remaining one-half balance becoming due on December 31, 1993. Based on their assumption that Solomon transferred the patent to Aqua Turbo in 1976, petitioners deducted Robert's distributive share of Aqua Turbo's 1976 losses on their 1976 return. These losses were attributable solely to research and development expenses Aqua Turbo allegedly incurred in connection with the patent. On their 1977 and 1978 returns, petitioners also deducted Robert's distributive share of Aqua Turbo's 1977 and 1978 losses. These losses were attributable solely to deductions for depreciation of the patent and were computed by using a cost basis of $20,000,000. In his notice of deficiency, respondent disallowed all of these deductions claimed by the partnership, and thereby determined that *107 petitioners were not entitled to a deduction for partnership losses during the relevant years. 1977 and 1978 Losses
In his motion for summary judgment, respondent presents several arguments for disallowing the 1977 and 1978 losses claimed by Aqua Turbo. His primary contention is that the partnership's liability for the balance of the purchase price ($19,950,000) was too contingent to be included in its cost basis for purposes of computing depreciation deductions. Although generally such a conclusion requires a factual determination, recently this Court held that certain obligations payable out of future profits were, as a matter of law, too contingent to be recognized for tax purposes. Graf v. Commissioner,80 T.C. 944 (1983); Saviano v. Commissioner,80 T.C. 955 (1983). This Court therefore granted the government's motion for summary judgment and partial summary judgment in the respective cases. See also Denver & Rio Grande Western R.R. Co. v. United States,205 Ct. Cl. 505 F.2d 1266 (1974). For the following reasons, however, we conclude that the instant case is distinguishable from those cases. The nonrecourse obligations *108 at issue in Graf and Saviano were payable solely out of profits earned from certain specified activities. If profits were never earned, no payment would ever become due. In the instant case, however, even if the patent never generated any profits, the balance of the purchase price would nevertheless become due in two equal payments on December 31, 1992, and December 31, 1993. In the event of default, the inventors would be entitled to recover the patent. Thus, payment would become due merely upon the passage of time rather than solely out of future profits as was the case in Graf and Saviano.Accordingly, we reject respondent's contention that because of the terms of repayment the partnership's liability for the balance of the purchase price was, as a matter of law, too contingent to be recognized for tax purposes. See Crane v. Commissioner,331 U.S. 1 (1947); Commissioner v. Tufts, 461 U.S.     (1983); Graf v. Commissioner,supra at 952, 953. See also Mayerson v. Commissioner,47 T.C. 340 (1966). Respondent also contends that the partnership's liability was "too contingent" because the partnership *109 will not be under any economic compulsion to pay the balance of the purchase price when the 1992 and 1993 payments become due. Respondent reaches this conclusion based on his assumption that, since the seventeen-year term of the patent will expire in 1994, the value of the patent will be negligible when these payments become due. In such case, respondent argues, the partnership will have no economic incentive to make the payments. See, e.g., Estate of Franklin v. Commissioner,64 T.C. 752 (1975), affd. 544 F.2d 1045 (9th Cir. 1976). Although there may well be merit to this contention, it is based on a factual assumption respondent makes with respect to the value of the patent. In a motion for summary judgment, however, the opposing party is to be afforded the benefit of all reasonable doubt with respect to any question of fact, and any inference to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to that party. See United States v. Diebold, Inc.,369 U.S. 654 (1962); Espinoza v. Commissioner,78 T.C. 412 (1982). Viewing the facts herein in a light most favorable *110 to petitioners, it is clear that there are genuine issues of fact with respect to the value of the patent. [2] Thus, in the context of the instant motion it would be inappropriate for us to conclude that, based on the value of the patent, the partnership will not be under any economic compulsion to make the 1992 and 1993 payments. [3]
*111 Finally, respondent contends that since Solomon did not formally assign the patent to Aqua Turbo until January 17, 1978, the partnership did not own a depreciable interest in the patent prior to that date. Similarly, respondent argues that even though the patent was eventually transferred to the partnership, the partnership never assumed any liability for the balance of the purchase price and therefore at no point was it entitled to depreciation deductions on that amount. Based on the affidavits submitted by petitioners, however, it is clear there are genuine issues of fact concerning whether Solomon assigned the partnership an equitable interest in the patent in 1976 and, if so, whether the partnership assumed Solomon's liability for the balance of the $20,000,000 purchase price. The fact that a formal assignment of the patent was not made until 1978 certainly does not preclude petitioners from proving at trial that an equitable assignment had been previously made in 1976. [4]
*112 1976 Losses
With respect to the partnership's 1976 deductions for research and development expenses, respondent contends that the partnership was not entitled to any such deductions because the partnership was not even established until 1977. Although a document entitled "Agreement of Limited Partnership of Aqua Turbo Disposal Limited" (herein the partnership agreement) was executed on November 15, 1976, the partnership's "Certificate of Limited Partnership" was not filed with the State of California until March 23, 1977. Since the partnership agreement provides that the partnership was not to commence until the filing of the "Certificate of Limited Partnership," respondent argues that as a matter of law the partnership was not in existence in 1976. We disagree. Whether a partnership exists for Federal income tax purposes is a question of fact which turns primarily on the intent of the parties involved. Commissioner v Culbertson,337 U.S. 733, 742 (1949). In the instant case, the affidavits submitted by petitioners provide some evidence that the partners intended to form the partnership in 1976 when they made their capital contributions to Aqua Turbo. *113 Since this Court has stated on several occasions that summary judgment is particularly inappropriate when questions of intent are present, see Espinoza v. Commissioner,78 T.C. 412, 417 (1982), we hold that the question of when the partnership came into existence is a matter best left for trial. In their cross-motion for partial summary judgment, petitioners contend that there is no material issue of fact with respect to whether they are entitled to deduct Robert's distributive share of the research and development expenses allegedly incurred by the partnership in 1976. Although the cancelled checks and receipts which petitioners have submitted as evidence of these expenses may establish that money was spent, such evidence certainly does not establish that the money was expended for research and development of the patent. Moreover, as discussed above, there still exists a genuine issue of fact whether the partnership even existed in 1976. Accordingly, for the above reasons, we deny both respondent's motion for summary judgment and petitioners' motion for partial summary judgment. To reflect the foregoing, An appropriate order will be entered.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. For instance, a document prepared in 1977 and entitled "The Market Potential for the Aqua-Turbo Disposer" projected that the patent would generate "a sales volume at the end of 10 years of $427 million annually, and a cumulative sales total of over $1.5 billion at the end of the next ten years." It would be inappropriate for us to assess the reasonableness of this projection in the context of the instant motion. ↩
3. In a related argument, respondent contends that several factors, including an alleged failure by Solomon to make the $50,000 downpayment on the purchase price and the partnership's lack of assets in addition to the patent, indicate that the acquisition of the patent by Solomon and the partnership was not a bona fide transaction. Once again, however, any such argument clearly involves genuine issues of fact which cannot be resolved on summary judgment. Additionally, respondent also points out that Solomon was convicted of conspiring to defraud the United States government and for tax evasion in connection with his acquisition of the patent on behalf Aqua Turbo. In essence, respondent's contention is that petitioners are collaterally estopped from arguing that any bona fide indebtedness was created as a result of the acquisition of the patent. However, collateral estoppel is an affirmative defense which respondent must raise in his answer. See Rule 39. Since respondent failed to raise such defense in his answer, we refuse to consider it herein.↩
4. Our conclusion herein that whether Aqua Turbo assumed Solomon's liability under the purchase agreement involves a genuine issue of fact which cannot be decided by summary judgment also bears on respondent's contention that the amount of petitioner's distributive share of Aqua Turbo's losses is limited by sec. 704(d), I.R.C. 1954. During the relevant years, sec. 704(d) provided in relevant part as follows: For purposes of this subsection, the adjusted basis of any partner's interest in the partnership shall not include any portion of any partnership liability with respect to which the partner has no personal liability. Significantly, the amendment adding the above language to sec. 704(d), I.R.C. 1954, was applicable only for liabilities incurred after December 31, 1976. Sec. 213(f)(2) of Pub. L. 94-455, 90 Stat. 1548. Since we have concluded that whether in 1976 Aqua Turbo assumed Solomon's liability under the purchase agreement involves a material issue of fact which must be resolved by trial, it is therefore impossible for us to decide herein whether Robert's distributive share of Aqua Turbo's losses during the relevant years is subject to the limitation contained in sec. 704(d)↩.