ALLEN N. BRUNWASSER AND BEVERLY BRUNWASSER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brunwasser v. Commissioner
Docket No. 34386-84.
United States Tax Court
T.C. Memo 1986-198; 1986 Tax Ct. Memo LEXIS 414; 51 T.C.M. (CCH) 1019; T.C.M. (RIA) 86198; May 15, 1986. Allen N. Brunwasser, pro se. Edward J. Laubach, Jr., for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to Special Trial Judge Hu S. Vandervort pursuant to section 7456 and Rules 180 and 181. [1] The Court agrees with and adopts his opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL *416 JUDGE VANDERVORT, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment and To Award Damages Under I.R.C. Section 6673, filed May 16, 1985. [2]
In the notice of deficiency issued to petitioners on July 3, 1984, the Commissioner determined deficiencies in petitioners' Federal income taxes for the taxable years 1980 *417 and 1981 in the amounts of $21,412.91 and $3,141.68, respectively. The issues raised by respondent's motion are: (1) whether there exists a deficiency in petitioners' Federal income taxes for 1980; (2) whether there exists a deficiency in petitioners' Federal income taxes for 1981; and, (3) whether damages should be awarded to the United States pursuant to section 6673. Petitioners timely filed their 1980 Federal income tax return on August 24, 1981, having been granted an extension until September 15, 1981 to file such return. On Schedule G, Income Averaging, petitioners made several mistakes in their addition and subtraction. In computing the Base Year 1978 and the Base Year 1976, petitioners made the following errors: Petitioners' Computation
Correct Computation
Line 1   $144,705.00
$144,705.00
Base Year
-Line 2(a)
2,250.00
- 2,250.00
1978
$141,455.00
$142,455.00
Base Year
Line 3   $131,568.00
$131,568.00
1976
+Line 5   3,200.00
3,200.00
$128,368.00
$134,768.00
In computing the tax on the Schedule G (lines 15-28), petitioners made several more errors which account for a large part of the final erroneous *418 Schedule G calculation. On line 22 petitioners mistakenly inserted $90,683.00 when they should have reported $84,771.00. Thus when they subtracted line 22 ($90,683.00) from line 21 ($90,683.00) petitioners came up with zero in line 23 when it should have been $7,120.00. This result follows because petitioners also incorrectly computed the entry for line 21; the correct entry was $91,891. Next on line 24, when petitioners were instructed to multiply the amount on line 23 by 4, they came up with zero when they should have reported $28,480.00. As a result of these computational errors on Schedule G, petitioners reflected a total tax liability, inclusive of self-employment tax, of $92,780.90, rather than the correct tax, utilizing Schedule G, of $122,468.90 on their Form 1040. On October 19, 1981, petitioners received a mathematical or clerical error assessment pursuant to sections 6213(b)(1). The assessment was abated on March 21, 1983, after petitioners requested an appeal from the assessment under section 6213(b)(2). Thereafter, an audit of petitioners' 1980 return was conducted. Petitioners timely filed their 1981 Federal income tax return on September 22, 1982 having been *419 granted an extension to file to October 15, 1982. While filling out their return, petitioners made the following errors. On Form 4726, Maximum Tax on Personal Service Income, petitioners made several mistakes. In determining net income on line 3 they omitted their $7,500.00 Keogh deduction. In addition petitioners incorrectly substracted the figure on line 18 from the amount on line 17, resulting in the incorrect figure on line 19. (Even if petitioners had not made the subtraction error, their results would have been incorrect due to the omission of the Keogh deduction earlier in the calculation of the maximum tax). On line 20 petitioner reported a final figure of $122,176 as their maximum tax, while the correct computation yields $125,153.04. Petitioners carried over the incorrect maximum tax of $122,176.00 from Form 4726 to Form 1040, line 35. Several lines down, on line 46, petitioners claimed what they titled a "General Tax Credit" of $180.00. This amount was inserted on line 46 which calls for Total Credits. Total Credits is derived from adding together all the credits listed on lines 38 through 45. There is no "General Tax Credit" listed on lines 38 through 45, nor *420 did petitioners indicate any authority allowing such a credit. After subtracting the $180.00 "General Tax Credit" from their reported line 35 tax of $122,176, petitioners arrived at a tax of $121,996.00. To this number they added $2,762.10 of self-employment tax reflected on line 48. However, instead of arriving at $124,758.10 (the correct total of $121,996.00 plus $2,762.10), petitioners reported $124,938.10 on line 54. This figure is $180 more than it should be if added correctly, which leads us to believe that petitioners added back the $180.00 "General Tax Credit" previously taken on line 46. Therefore, petitioners reported total tax of $124,938.10 on line 54 of Form 1040 for 1981. Because of the above and the initial mistake of carrying over the incorrect tax from line 20 of Form 4726 to line 35 of Form 1040, petitioners' total tax on line 54 of Form 1040 was in error. With all of the calculations done correctly the total tax on line 54 of Form 1040 is $127,915.14 (rather than the $124,938.10 as reported by petitioners). The net result of petitioners' errors is an understatement of tax in the amount of $2,977.04 [3]. *421 On July 3, 1984, the Commissioner issued a notice of deficiency to petitioners concerning both the 1980 and 1981 taxable years. The deficiency in 1980 was based on the above errors and petitioners' alleged omission of $381.00 in interest income. [4] The Commissioner recomputed petitioners' tax for 1980 using the maximum tax method rather than income averaging, to come up with a lower tax liability for 1980. The total deficiency determined for 1980 was $21,412.91. The 1981 deficiency was based upon petitioners' alleged errors, their failure to deduct Keogh plan contributions from their maximum tax computation and the erroneous "General Tax Credit." The notice of deficiency stated a deficiency of $3,141.68. [5] Petitioners filed a timely petition to begin this case. Thereafter, respondent filed the motion which is before us today. *422 On July 11, 1985, at a special trial session of the Court, in Pittsburgh, Pennsylvania, the parties were given a chance to present oral argument regarding respondent's motion. However, there was no appearance by or on behalf of petitioners. [6]
Rule 121(b) states that a decision on a motion for summary judgment shall be rendered "if the pleadings, * * * and any other acceptable materials, together with the affidavits, *423 if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Thus, in deciding a motion for summary judgment, we must clearly determine that there are no issues of material fact in dispute. Season-All Industries, Inc. v. Turkiye,425 F.2d 34 (3d Cir. 1970); Gulfstream Land & Development Corp. v. Commissioner,71 T.C. 587 (1979). The burden of demonstrating that there is no genuine issue of material fact is upon the moving party. Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Graf v. Commissioner,80 T.C. 944, 946 (1983); Jacklin v. Commissioner,79 T.C. 340, 344 (1982). After careful consideration of the record in this case, we find there are no issues of material fact in dispute. Therefore, in accordance with Rule 121(b), we shall proceed with the resolution of the legal issues brought forth in respondent's motion. [7]
*424 The first issue for our determination is whether there exists a $21,412.91 deficiency in petitioners' 1980 Federal income taxes. Respondent argues that the deficiency in income tax is a result of numerous errors made by petitioners in filling out their Federal income tax return. We agree. The First error, on line 1 and line 2(a) of Schedule G, Income Averaging, was a simple mistake in subtraction. Petitioners were $1,000 off when they subtracted line 2(a) ($2,250.00) from line 1 ($144,705.00), arriving at $141,455.00, rather than the correct figure of $142,455. The second error occurred when petitioners failed to follow the instructions on Schedule G which require the addition of lines 3 and 5. Instead, petitioners subtracted the amount listed on line 5 from the amount listed on line 3. Petitioners proceeded to make additional errors on Schedule G when they miscalculated the tax on the amount on line 15 which was to be reported on line 22. As a result of these errors, the remaining calculations on Schedule G were also in error. The final result was that petitioners reported a Schedule G tax on line 28 of $90,683.00 when it should have been $120,371.00. This error continued *425 on to Schedule TC and Form 1040, resulting in petitioners underreporting their income tax liability for 1980 by $29,688.00.However, in the notice of deficiency, respondent calculated petitioners' tax by using the more favorable maximum tax rather than income averaging with the result that petitioners underreported their tax liability by $21,412.91. The second issue for our determination is whether there is a deficiency of $3,141.68 in petitioners' 1981 Federal income taxes. On Form 4726, Maximum Tax on Personal Service Income, petitioners neglected to include their Keogh deduction. Later, on line 19, they reached an inaccurate result due to incorrect subtraction of line 18 from line 17. The erroneous result on Form 4726 was then carried over to Form 1040 where petitioners made additional errors. Petitioners claimed what they titled a "General Tax Credit," in the amount of $180.00 on Form 1040. On the 1981 tax return there is no space or line set aside for a "General Tax Credit." Petitioners simply inserted the $180.00 on line 46 of their Form 1040. This line indicates that a taxpayer should insert the total credits allowed for the year. Credits allowed in 1981 are reflected *426 in lines 38 through 45. Petitioners claimed none of these allowable credits, instead claiming a "General Tax Credit of $180.00." Section 42 authorized a "General Tax Credit" which expired in 1978. However, in 1981, the year before the Court, there was no such authorized tax credit. See section 42, as amended by section 103(c), Tax Reduction and Simplification Act of 1977, 91 Stat. 126, 139. Therefore, we find that no "General Tax Credit" existed in 1981. The net result of the above errors in completing Form 4726 and Form 1040 was a deficiency of $3,141.68. The last issue we are asked to consider in this motion is whether we should award damages to the United States pursuant to section 6673. We follow our decision in Brunwasser v. Commissioner,T.C. Memo. 1986-196 (filed May 15, 1986) in deciding not to award damages to the United States in this case. However, we must reiterate that if petitioners file any further petitions in this Court, based on arguments wholly unsupportable in the body of Federal tax law, we will award damages to the United States pursuant to section 6673. An appropriate order shall be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise stated.↩
2. This docket, No. 34386-84, is one of three dockets pending before the Court involving the same taxpayers and similar issues. All three dockets, No. 27166-82, No. 18193-82 and No. 34386-84, are the subject of substantially similar motions for summary judgment filed by respondent on May 16, 1985. Respondent previously filed motions for summary judgment in the cases at docket Nos. 18193-82 and 27166-82 on September 17, 1984. The Court conducted a hearing on these motions in Pittsburgh, Pennsylvania before the Honorable Charles E. Clapp, II on November 26, 1984. However, before the conclusion of this hearing Judge Clapp↩ recused himself. The hearing was concluded and respondent's motions were denied without prejudice. On May 16, 1985 respondent filed the motions currently before the Court.
3. Although the return as filed by petitioners for 1981 shows a total tax of $124,938.00, the Commissioner ultimately assessed a smaller amount of tax against the petitioners for 1981.↩
4. Petitioners have not put the $381.00 of interest income in issue, therefore, petitioners are deemed to have conceded this issue. See Rollert Residuary Trust v. Commissioner,80 T.C. 619, 636 (1983), affd. 752 F.2d 1128 (6th Cir. 1985); Markwardt v. Commissioner,64 T.C. 989, 997↩ (1975).
5. See footnote 3.↩
6. Petitioners were notified of the date, place and time of the hearing by an Order of the Court. Petitioners transmitted an appeal to the United States Court of Appeals for the Third Circuit by mailing it to the United States Tax Court in Washington, D.C. Since this was an interlocutory appeal, the appeal was returned to petitioners. See section 7483; Rule 190. In a letter accompanying the returned document, it was explained to petitioners that an appeal at this time was premature as no decision had yet been entered by the Court in this case. Petitioner, Allen Brunwasser, was advised by telephone on the day before the date of the hearing that the hearing would proceed as scheduled. Petitioners chose not to attend and were not represented at the hearing.↩
7. In a document entitled "Motion to Dismiss and Answer to Respondent's May 1, 1985 Motions and Brief, " filed by petitioners on June 12, 1985, certain other issues are raised in response to respondent's motions. A thorough discussion of any relevant issues is found in Brunwasser v. Commissioner,T.C. Memo. 1986-196↩ (filed May 15, 1986). In the interest of judicial economy, we will not repeat the arguments or the ensuing analysis here, but incorporate our prior opinion by this reference.